THE WESTERN CONFERENCE OF ORIGINAL FREE WILL BAPTISTS OF NORTH CAROLINA, AN UNINCORPORATED RELIGIOUS ASSOCIATION, M. L. JOHNSON, MODERATOR; DEWEY C. BOLING, ASSISTANT MODERATOR; R. N. HINNANT, CLERK; RALPH BARNES, TREASURER; CONSTITUTING THE OFFICERS OF SAID CONFERENCE; M. L. JOHNSON, R. N. HINNANT, EARL GLENN, R. H. JACKSON, AND RALPH BARNES, CONSTITUTING THE EXECUTIVE COMMITTEE OF SAID CONFERENCE, v. RONALD CREECH

AND

J. G. TEASLEY, OLIF PASCHALL, CALVIN GRIFFIN, JOE PEELE, THE BOARD OF DEACONS OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH, AND H. M. ALFORD, LEONARD GIBBS, BOYCE MOIZE, TRUSTEES, AND LEO PASCHALL, CHURCH CLERK, AND H. A. STEWART, CHURCH TREASURER, ALL OFFICERS OF THE OFFICIAL BOARD OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH AND OTHERS OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH UNITED IN INTEREST AS RECOGNIZED BY THE WESTERN CONFERENCE OF ORIGINAL FREE WILL BAPTISTS OF NORTH CAROLINA KNOWN AS THE J. G. TEASLEY FACTION, v. RONALD CREECH.

AND

THE WESTERN CONFERENCE OF ORIGINAL FREE WILL BAPTISTS OF NORTH CAROLINA, AN UNINCORPORATED RELIGIOUS ASSOCIATION; AND M. L. JOHNSON, MODERATOR; DEWEY BOLING, ASSISTANT MODERATOR; R. N. HINNANT, CLERK; RALPH BARNES, TREASURER: OFFICERS OF SAID CONFERENCE: M. L. JOHNSON, R. N. HINNANT, EARL GLENN, R. H. JACKSON AND RALPH BARNES, EXECUTIVE COMMITTEE OF SAID CONFERENCE, AND J. G. TEASLEY, OLIF PASCHALL, CALVIN GRIFFIN, JOE PEELE, THE BOARD OF DEACONS OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH; AND H. M. ALFORD, LEONARD GIBBS, BOYCE MOIZE, INDIVIDUALLY AND AS TRUSTEES; AND LEO PAS-

CHALL, CHURCH CLERK; AND H. A. STEWART, CHURCH TREASURER, ALL OFFICERS OF THE OFFICIAL BOARDS OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH AND OTHERS OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH UNITED IN INTEREST AS RECOGNIZED BY THE WESTERN CONFERENCE OF ORIGINAL FREE WILL BAPTISTS OF NORTH CAROLINA, KNOWN AS THE J. G. TEASLEY FACTION, v. JAMES A. MILES, LLOYD WILLIFORD, RICHARD BLAKE, SAM WELLS, MACON PERRY, BOBBY McCORKLE, TOM LEE, ARNOLD GOODMAN, CLYDE POWELL, ALL DEFENDANTS PURPORTING TO BE MEMBERS OF THE BOARDS OF DEACONS OF THE EDGEMONT FREE WILL BAPTIST CHURCH; AND GROVER C. MYERS; AND J. E. CHAPPELL, INDIVIDUALLY AND AS THE PURPORTED BOARD OF TRUSTEES OF THE EDGEMONT ORIGINAL FREE WILL BAPTIST CHURCH, AND OTHERS UNITED IN INTEREST WITH THE ABOVE NAMED, KNOWN AS THE JAMES A. MILES FACTION.

(Filed 12 January, 1962.)

**1. Appeal and Error § 50—**

Upon appeal from an order continuing a temporary restraining order to the hearing, the Supreme Court does not decide the ultimate questions and issues raised by the pleadings, but only whether or not there was error in continuing the temporary restraining order pending trial on the merits.

**2. Injunctions § 13—**

Ordinarily, a temporary restraining order will be continued to the hearing if there is probable cause for supposing plaintiff will be able to sustain his primary equity and if there is reasonable apprehension of irreparable loss unless injunctive relief be granted, or if it appears that the restraining order is necessary to protect plaintiff's rights until the controversy can be determined on the merits.

**3. Same—**

The court has discretion to continue a temporary restraining order to the hearing upon the pleadings and affidavits alone, but the court should take into consideration the inconvenience and damage to defendant as well as the benefits which will accrue to plaintiff.

**4. Appeal and Error § 50—**

On appeal in injunctive cases the Supreme Court may review the findings, but it will be presumed that the judgment entered below is correct and the burden is upon appellant to assign and show error.

**5. Religious Societies § 2—**

A church may be congregational in some respects and connectional in others.

**6. Religious Societies § 3—**

Civil courts have no jurisdiction over or right to supervise purely ecclesiastical questions or church polity, but the courts do have jurisdiction over contractual and property rights involved in a church controversy, in the decision of which the courts will inquire into matters of church government only to the extent of determining whether the church tri-

bunal acted within the scope of its authority and observed its own organic forms and rules.

**7. Same; Injunctions § 13— Order restraining defendant from acting as a minister of particular church held properly continued to hearing upon prima facie showing that plaintiffs had authority to oust him.**

Where, in an action to oust a minister who had been employed by a church affiliated with the conference of the denomination and who had been endorsed by such conference as a minister of the denomination, it is made to appear upon motion to show cause that there is probable cause that upon the trial upon the merits plaintiffs can show that the conference has authority to revoke the rights and privileges of the minister to act as pastor of the particular church and to prohibit him from holding himself out as a minister of the denomination among its member churches, the court properly continues an order restraining such minister from acting as pastor of the particular church, but it is error for the court to prescribe rules or conditions for the readmission of the minister to good standing in the church or conference, since this is an ecclesiastical matter, nor should it restrain such minister from exercising any ministerial functions with respect to other member churches of the conference in the absence of allegation that he had attempted or threatened to exercise such functions.

**8. Same—**

Where there is controversy between two factions of a congregation of a church as to the right to use and control the church property, the courts have authority to determine which faction is the true congregation of the church by reason of adherence to the articles of faith and polity and customs and usages of the denomination.

**9. Same—**

Upon the hearing of an order to show cause entered in an action to determine the right to use and control church property, the court should not grant exclusive control and use of the church property to either faction of the congregation, but should seek to maintain the *status quo* as nearly as possible and permit both factions to share the use and possession of the church properties on an equal basis until the hearing on the merits, and the court is without authority to prescribe rules or conditions upon which members of one faction might be restored to membership in the true congregation of the church, this being an ecclesiastical question.

**10. Injunctions § 13—**

In continuing a temporary restraining order to the hearing the court should not grant plaintiffs relief in excess of that to which they are entitled upon the facts alleged in their pleadings, and should seek to maintain the *status quo* as nearly as possible pending the determination of the cause upon the merits.

APPEAL by defendants from *Williams, J.,* May 1961 Civil Term of DURHAM.

Three civil actions were consolidated for hearing.

The Western Conference of Original Free Will Baptists of North Carolina (hereinafter called Western Conference) is plaintiff in one action and co-plaintiff in another.

J. G. Teasley and others associated with him (known as the Teasley faction) are, or claim to be, members (some officials) of Edgemont Original Free Will Baptist Church of Durham, North Carolina (hereinafter called Edgemont Church). The Teasley faction is plaintiff in one action and co-plaintiff with Western Conference in another.

James A. Miles and others associated with him (known as the Miles faction) are, or claim to be, members (some officials) of Edgemont Church. The Miles faction is defendant in the action instituted by the Western Conference and the Teasley faction jointly.

Ronald Creech is, or claims to be, pastor of the Edgemont Church and is defendant in the other two actions.

The actions were instituted 24 April 1961.

(1) The facts, as alleged in plaintiffs' pleadings and set out in their affidavits and exhibits are briefly summarized as follows:

The Original Free Will Baptists of North Carolina had their beginning in this State in 1727 with the establishment of a church in Perquimans County. The present membership of the denomination in North Carolina is approximately 50,000, the largest membership of any State in the United States. This denomination has since its inception organized into Conferences or Associations in the Annual Conference. For a long time there was one Conference. Now there are nine Conferences, constituted for the most part according to geographical location in the State. The Western Conference was formed in 1886.

The Conferences operate under the "Statement of Faith and Discipline for Original Free Will Baptists of North Carolina" (hereinafter called the Discipline). The Discipline has at former times been designated by other titles and has from time to time been revised. The last revision was in 1955.

The Discipline contains, among others, the following provisions:
"Organization of the Church," page 44:

> "When a sufficient number of believers desire to be organized into a church, they shall make application to the moderator of the conference or association within whose bounds the proposed church is to be located. The moderator shall call the executive committee or officers of said conference or association immediately for an investigation. If the investigation is satisfactory, the organization is perfected. . . ."

"The Pastor," page 46:

> "The church shall call its own pastor out of the duly ordained ministers upon such terms as may be mutually agreeable. A pastorate shall not be terminated by the church or pastor without a ninety-day previous notice, or unless agreed to by both parties."

"The Ministry," pages 47 to 48. This section makes provision for the ordaining of ministers by the Conference Ordaining Council and provides:

> "Every minister, licensed or ordained, shall unite himself with the conference or association of which his local church is a member. . . .
>
> "Each conference or association assumes and exercises authority over Original Free Will Baptist ministers in its jurisdiction or bounds.
>
> "A charge against an ordained or licensed minister must be presented to the committee in writing, signed by the accuser, together with the evidence to support the charges.
>
> "This trial committee shall give the accused a private trial, hearing first the evidence supporting the accusations, and then hearing the evidence in his defense. After all evidence, for and against, has been presented, all persons shall retire, leaving the committee to determine its verdict and report same.
>
> "It is mutually understood that the verdict of this committee is final."

"Independence of Churches," pages 52 and 53.

> "Each local church is a distinct and independent organization, with full authority to manage its own internal affairs, elect its officers, receive, dismiss, discipline and exclude members. But this principle of independence of each church is not held as a law of isolation; on the contrary, churches conveniently situated associate and co-operate in all things which tend to advance the common cause. Councils are, therefore, called in the organization of a church, and the settlement of serious difficulties. On the same principles, the churches meet by delegation in the annual conference or association. The annual conference or association being the highest tribunal, shall have final disciplinary authority over the local church."

According to the minutes of the Western Conference and other Conferences they have on occasions exercised jurisdiction in disciplining

local churches, deciding between factions in local churches, and in disciplining and revoking the credentials of ministers.

The Edgemont Church was organized in 1922 in accordance with the Discipline and was admitted into the Western Conference on October 18, 1923. It has been a member of and has participated in the proceedings and activities of the Western Conference continuously since that date.

Ronald Creech became pastor of Edgemont Church in October 1957 and a member of the Western Conference on October 16, 1957.

Prior to August 1960 strife and dissension arose in the Edgemont Church because of the conduct of Creech, supported and acquiesced in by the Miles faction, in departing from the customs, usages and doctrine of the Original Free Will Baptists of North Carolina. They had expelled members without proper hearing, arbitrarily removed elected officers, advocated the doctrine of "eternal security" which is contrary to that chapter of the Discipline entitled "Perserverance of the Saints," and otherwise acted contrary to the customs, usages, polity and doctrine of the Church.

About 23 August 1960 the Teasley faction brought charges supported by evidence, all in writing, and requested action by the Western Conference. The Executive Committee, which acts for the Conference when it is not in session, and the Board of Ordination attempted on several occasions in August and September 1960 to mediate the disputes. Creech and the Miles faction refused to agree to a time or place for meeting, refused to meet in good faith, took over all the property and records of the Edgemont Church and refused to permit either the Teasley faction or the Conference Committee to use the Church's facilities.

The Miles faction passed a resolution on September 4, 1960 recognizing Creech as pastor and purporting to authorize him pursuant to G.S. 51-1 to perform marriage ceremonies.

In late August Creech and the Miles faction were advised by letter of the charges against them. The Executive Committee and Board of Ordination notified them that a hearing would be held on September 23, 1960, in King's Chapel Church in Durham to consider the charges. Neither Creech nor the Miles faction attended. The joint committees heard evidence of the accusers and later, in executive session, found the following facts: (numbering ours)

(1) Since 1957 the spirit of cooperation, by pastor and church, with the established and approved programs of the Western Conference and State Convention has decreased and these programs have often been the objects of severe criticism in the Challenger, the weekly bulletin of the Edgemont Church.

(2) Dissension has arisen in the membership of Edgemont Church that has created factions, strife and unrest.

(3) The Teasley faction presented petitions containing charges of denominational irregularities of doctrine and administration against the pastor and the Miles faction.

(4) The pastor and the Miles faction have defied and repudiated the jurisdiction of the Western Conference.

The doctrine of eternal security has been advocated by some of the members of the Miles faction and tolerated by other members, even to the point that the pastor has been "pressured" to take a neutral position on this question; this doctrine is in direct conflict with Chapter 13 of Discipline entitled "Perserverance of the Saints."

(6) The Miles faction removed from membership and office several members for the sole reason that they had contacted Conference officials about the conditions in Edgemont Church.

(7) Efforts were made by the Miles faction to exact compliance from J. G. Teasley by intimidation and implied threats of hurt to be done to his son, a Free Will Baptist minister.

(8) The Miles faction acted together to secure passage of a resolution to recognize Creech as pastor of Edgemont Church, to authorize him to perform marriage ceremonies, and to approve sending a letter to the joint committee denying that there was a dispute in the church.

(9) The Miles faction has caused the church to cease using Sunday School literature published by the Free Will Baptist Press, which had formerly been used for many years.

(10) Through the Challenger the Miles faction and Creech have embarrassed the Western Conference and the State Convention in the Church program by unjust criticism and "misrepresented reports."

More than 120 members of the Edgemont Church, including the Teasley faction, petitioned the Western Conference, reaffirmed their acceptance of the Discipline and the doctrines, practices and policies of the denomination, and asked to be recognized as the true congregation of the Edgemont Church.

The joint committee advised the Miles faction that it had been guilty of irregularities, and that in the opinion of the committee this faction should restore to membership and office those who had been expelled, and should establish its adherence to the doctrines, practices and policies of the Original Free Will Baptists of North Carolina and accept the Discipline in its entirety. The Miles faction ignored the suggestion.

On January 18, 1961, at the annual meeting of the Western Confer-

ence the following motion was made and adopted by a vote of 98 for
and 22 against:

> "In view of the fact that Ronald Creech has refused to recog-
> nize the jurisdiction of the Western Carolina Conference, by re-
> fusing to appear before the Executive Committee and Board of
> Ordination to answer charges filed against him, and has resorted
> to the Civil Courts, and has obtained a restraining order to pre-
> vent the Committee and Board from reporting their action to
> the conference, and is even attempting to extract an enormous
> amount of money; I move that his Ministerial rights and Cre-
> dentials, held by reason of his endorsement by and membership
> in the Western Conference, be and are hereby declared annulled
> until such time as he presents himself fully to the jurisdiction of
> the Western Conference and its duly constituted boards and com-
> mittees, without restraint."

The Western Conference also adopted a motion by a vote of 88 to
10 that the report of the joint committee (not copied herein) be
adopted as duly authorized, and be made the action of the Conference
(among other things, recognition of the Teasley faction as the true
congregation of the Edgemont Church), and that the delegates repre-
senting the true congregation be seated.

In defiance of the conference action, Creech and the Miles faction
continued in possession of the properties and records of the Edge-
mont Church until the instant actions were instituted. In the mean-
while the Teasley faction met in locations other than church property,
elected officers and functioned generally as a church.

(2) Facts, as set out in defendants' affidavits and exhibits, are in
brief summary as follows:

The Edgemont Church owns property valued in excess of $125,000.00,
has a membership of about 850 men, women and children, has an
annual income of approximately $35,000.00, and is one of the largest
Free Will Baptist Churches in the United States.

It is an independent, autonomous church. Through the will of a
majority of its congregation it has voluntarily associated with the
Western Conference and other similar church organizations, including
the National Association of Original Free Will Baptists of the United
States.

On January 22, 1961 the congregation of Edgemont Church by vote
of 226 to 0 severed its fellowship with the Western Conference.

Edgemont Church has no written constitution or by-laws. The State
Convention has as a governing document the Discipline (hereinbefore
referred to).

The Edgemont Church has made great progress under the ministry of Rev. Ronald Creech. Shortly before August 1960 a dispute arose between the Teasley faction, a small minority group, and the overwhelming majority of the congregation over the retention of Creech as pastor. The congregation voted 310 to 16 to retain Creech as pastor. The congregation expelled five members for causing continued unrest and for refusal to abide by majority decisions.

The Western Conference undertook to hold a trial of the Miles faction on charges never disclosed to the church, on accusations made by undisclosed persons. The Edgemont Church notified the officials of the Western Conference that there was no longer any unrest in the church and declined the offers of officials of the Western Conference to mediate. As was its right as an autonomous, congregational church, Edgemont refused to participate in a proceeding involving its internal affairs, to-wit, retention of its pastor and election of its officers.

The officials of the Western Conference met with the Teasley faction and thereafter refused to recognize the majority congregation of Edgemont Church as the true congregation, and withdrew the hand of fellowship from it.

Rev. Ronald Creech was ordained an Original Free Will Baptist minister by the Cumberland Association of Free Will Baptists, State of Tennessee, on January 15, 1951. He was called by a majority vote of the Edgemont Church on October 6, 1957, and has a contract of employment that can only be terminated by a majority vote of the Edgemont Church membership upon 90 days notice. He became a member of the Western Conference. At the time of the instant suits Rev. Creech and the Edgemont Church had severed their relationship with the Western Conference and applied for membership in the Cape Fear Conference. Creech is recognized as an ordained Original Free Will Baptist minister by the National Association of Free Will Baptists. On several occasions a vote was demanded by the Board of Deacons of Edgemont Church concerning the dismissal of Creech as pastor. Each time the vote was 7 to 2 for his retention. The congregational vote above referred to was also taken, by written ballot. None of the members who were expelled as trouble makers were prohibited from attending church services, Nevertheless, the Teasley faction withdrew from the church and functioned separately after August 24, 1960.

The officials of the Western Conference refused to give Creech a copy of the charges against him or to tell him the names of his accusers. He refused for this reason to attend the "hearing" scheduled for consideration of the charges.

In the actions instituted by them plaintiffs seek: (a) to have the Teasley faction declared the true officers and congregation of Edge-

mont Church and entitled to the use and possession of the church
property and records; (b) to enjoin the Miles faction from holding it-
self out as the true officers and congregation of Edgemont Church, and
from interfering with the Teasley faction in its use and possession
of the church property and records; and (c) to restrain defendant
Creech from holding himself out as pastor of the Edgemont Church,
from performing any ministerial functions with relation to this church
or as an Original Free Will Baptist minister, and from using and oc-
cupying the church parsonage.

There were various motions, proceedings and orders not material
to this appeal, and they are not referred to herein.

Defendants were directed to show cause on 10 May 1961 why the
injunctive relief prayed for by plaintiffs should not be granted pend-
ing a trial of the actions on the merits. On the date specified the
parties appeared and the court heard and considered the pleadings, af-
fidavits, exhibits and arguments of counsel. The court took the causes
under advisement and on 30 June 1961 entered a separate order in
each case. The court made findings of fact and conclusions in keep-
ing with the pleadings, evidence and contentions of plaintiffs.

The judgments proper entered in the respective cases are as follows:

Case No. 4736 *(Western Conference v. Creech):*

"IT IS . . . DECREED that the defendant Ronald Creech is, until
the trial of this cause is held on its merits and a final determination
made, or until this Court orders otherwise, hereby immediately en-
joined and restrained as follows:

"1. That the defendant Ronald Creech be immediately enjoined
and restrained from holding himself out and acting in the capacity
of an Original Free Will Baptist minister, said privilege being held
by reason of his endorsement by and membership in the Western
Conference, until such time as he presents himself fully to the juris-
diction of the Western Conference and its duly constituted Boards
and Committees without restraint and then and there submits himself
to the authority, ruling, and decisions of said Conference Committees
to the end that their rulings be final and binding upon the defendant.
That pending, during and after the defendant's appearance, if such
be made, before the proper Conference committee or committees and
a final report of such committee action and decisions, being immediate-
ly made known in writing to the Judge presiding over the Durham
County Superior Court, that said Court have and retain jurisdiction
over the defendant Ronald Creech.

"2. That the defendant Ronald Creech be restrained and enjoined
from preaching, reading prayers or performing any ministerial func-
tion whatsoever in the pulpit, church annex, Sunday School Annex or

Church Parsonage in any church which is a member of the Original Free Will Baptist denomination or any of the organizations of the Original Free Will Baptists of North Carolina, until such time as he submits himself to the jurisdiction of the Western Conference as prescribed in paragraph one of this Order."

Case No. 4737 *(Teasley Faction v. Creech)*:

"IT IS . . . DECREED that the defendant, Ronald Creech, is, until the trial of this cause is held on its merits and a final determination made, or until this Court orders otherwise, hereby immediately enjoined and restrained as follows:

"1. From occupying the pulpit and acting or attempting to act as the pastor of the Edgemont Original Free Will Baptist Church or performing any ministerial function whatsoever from the pulpit, in the Church Annex, Sunday School Annex, or Church Parsonage of the Edgemont Original Free Will Baptist Church or from having any other person designated by him from doing such acts until he is employed by these plaintiffs as their regular minister.

"2. From publishing, mailing or distributing the church bulletin known as 'THE CHALLENGER' so long as he represents thereon that he is the pastor and that this is the official church bulletin of the Edgemont Original Free Will Baptist Church, Durham, North Carolina.

"3. From occupying the parsonage of the Edgemont Original Free Will Baptist Church until he is employed by these plaintiffs as their regular minister. That the defendant is to vacate this parsonage on or before the 1st day of August 1961."

Case No. 4738 *(Western Conference and Teasley Faction v. Miles Faction)*:

"IT IS . . . DECREED that the above named defendants (listing eleven members of the Miles faction by name), and each of them, and all persons acting with and in concert or under their direction or the direction of any of them, and all other persons to whom notice and knowledge of this order may come, are, until a hearing is held, the merits of this cause are determined, and until this Court orders otherwise, hereby immediately and forthwith enjoined and restrained as follows:

"1. From holding themselves out as the official church board of the Edgemont Original Free Will Baptist Church, Durham, North Carolina, and further from holding themselves out as being the true congregation of the Edgemont Original Free Will Baptist Church, Durham, North Carolina.

"2. From interfering with the plaintiffs J. G. Teasley Associates

use and benefit of the real and personal property belonging to the
Edgemont Original Free Will Baptist Church.

"That further, these above named defendants and each of them may,
if they desire, attend any and all church services in the Edgemont
Original Free Will Baptist Church. That the above named defendants
may, as they individually elect, become members of the true congre-
gation of this church by each of them individually reaffirming their
acceptance of the Statement of Faith and Discipline of Original Free
Will Baptists of North Carolina; they recognizing the authority of
the Western Conference and their loyalty to the doctrines, practices,
policies of the Original Free Will Baptists of North Carolina and of
the Western Conference of Original Free Will Baptists of North Caro-
lina.

"3. That the above named defendants and more especially those
defendants who are designated as officials of the Edgemont Original
Free Will Baptists of North Carolina are directed to take no further
action whatsoever either individually or collectively as officers of this
church.

"That further, the above named defendants are to immediately turn
over to the plaintiffs J. G. Teasley Associates the official church books,
records and all other property both real and personal belonging to the
Edgemont Original Free Will Baptist Church except what money now
may be in the hands of the defendants which is to be kept and re-
tained by them."

Defendants appeal and assign errors.

*Fletcher, Lake & Boyce for defendant, appellants.*
*Jones & Vann and Clarence Kirk for plaintiff, appellees.*

MOORE, J.   We do not decide here the ultimate questions and issues
raised by the pleadings. Defendants appeal from temporary restrain-
ing orders. The sole question before us is whether or not the court
erred in granting the temporary injunctions pending trial on the merits.
*Service Co. v. Shelby,* 252 N.C. 816, 115 S.E. 2d 12.

Ordinarily a temporary injunction will be granted pending trial
on the merits, (1) if there is probable cause for supposing that plain-
tiff will be able to sustain his primary equity, and (2) if there is rea-
sonable apprehension of irreparable loss unless injunctive relief be
granted, or if in the court's opinion it appears reasonably necessary
to protect plaintiff's right until the controversy between him and de-
fendant can be determined. *Edmonds v. Hall,* 236 N.C. 153, 72 S.E.
2d 221.

It ordinarily lies in the sound discretion of the court to determine

whether or not a temporary injunction will be granted on hearing pleadings and affidavits only. In the exercise of such discretion the court should consider the inconvenience and damage to defendant as well as the benefit that will accrue to the plaintiff. *Service Co. v. Shelby, supra; Lance v. Cogdill,* 238 N.C. 500, 78 S.E. 2d 319; *Huskins v. Hospital,* 238 N.C. 357, 78 S.E. 2d 116.

On appeal we are not bound by the findings or ruling of the court below in injunction cases, but may review the evidence on appeal. "Even so, there is a presumption that the judgment entered below is correct, and the burden is upon appellant to assign and show error." *Lance v. Cogdill, supra.*

Defendants contend that Edgemont Church is an independent, autonomous, congregational church and its association with the Western Conference is on a voluntary basis. *Windley v. McCliney,* 161 N.C. 318, 77 S.E. 226. Plaintiffs, on the other hand, contend that it is, in part at least, a connectional church, is subject to the Discipline, customs and usages of the Original Free Will Baptists of North Carolina, and the Western Conference is the highest tribunal and final disciplinary authority over the local church. *Church Conference v. Locklear,* 246 N.C. 349, 98 S.E. 2d 453. A church may be congregational in some respects and connectional in others.

On final hearing it must be determined to what extent, if any, the Western Conference has authority and jurisdiction (1) to decide between factions in a member congregation, and determine whether or not a faction has forfeited the right to be recognized as the true congregation by reason of departure from the faith and polity of the denomination, and (2) to ordain, try, discipline, revoke ordination, and restore ministerial credentials to member ministers.

Such matters are, of course, ecclesiastical in nature and in the establishment and exercise of church polity the civil courts have no jurisdiction or right of supervision. *Bouldin v. Alexander,* 15 Wall. 131; *Watson v. Jones,* 13 Wall. 679; *Reid v. Johnston,* 241 N.C. 201, 85 S.E. 2d 114. ". . . (W)henever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of the church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them." *Watson v. Jones, supra.* "The legal or temporal tribunals of the State have no jurisdiction over, and no concern with, purely ecclesiastical questions and controversies . . . but the courts do have jurisdiction, as to civil, contract and property rights which are involved in, or arise from, a church controversy." *Reid v. Johnston, supra.* Where civil, contracts or property rights are involved, the courts will inquire as to whether the church

tribunal acted within the scope of its authority and observed its own organic forms and rules. 45 Am. Jur., Religious Societies, s. 41, pp. 750-752. In the instant case the civil and contract rights of Rev. Creech and the property rights of the Edgemont Church congregation are involved.

From the evidence in the record there is probable cause for supposing that plaintiffs, at trial on the merits, can show that the Western Conference had authority to revoke the rights and credentials of Rev. Creech to act as pastor of the Edgemont Church and to forbid him to hold himself out as an Original Free Will Baptist minister by reason of endorsement by and membership in the Western Conference, and to determine that the Miles faction is not the true congregation of the Edgemont Church by reason of departure from the articles of faith and polity and from the customs and usages of the denomination; and that it, the Western Conference, acted within the scope of its authority and in accordance with its forms and rules.

Even so, in our opinion the orders appealed from grant relief, in certain respects, in excess of that to which plaintiffs are entitled upon the facts alleged in their pleadings, and in excess of the court's jurisdiction. *Collins v. Simms*, 254 N.C. 148, 118 S.E. 2d 402.

There is no showing that the Western Conference has any authority and jurisdiction beyond the churches and ministers which are its members. There is no allegation that Rev. Creech has attempted or threatened to exercise any ministerial functions with respect to any member churches of the Western Conference other than Edgemont Church. Moreover, the court is without jurisdiction to prescribe rules or conditions for readmission of Creech to good standing in the Edgemont Church or the Western Conference, for this is an ecclesiastical matter. We are advised that the order in case No. 4737 *(Teasley faction v. Creech)* has been modified so as to permit Creech to occupy the parsonage of the Edgemont Church pending the final determination of the action. If true, such order is effective and binding since there is no appeal therefrom.

The court is without authority and jurisdiction to prescribe rules or conditions by which members of the Miles faction may be restored to membership in the true congregation of Edgemont Church, assuming they are not such presently, since this is also an ecclesiastical matter.

The order in case No. 4738 *(Western Conference and Teasley faction v. Miles faction)* takes the church properties and records from the use and possession of one faction and give them exclusively to the other faction before there has been a final determination of the question as to which is the true congregation of the Edgemont Church. This is

contrary to the rulings of courts of equity in such situations. *Fredericks v. Huber,* 37 A. 90; 45 Am. Jur., Religious Societies, s. 64, p. 775. It might be finally determined that the true congregation consists of both factions. *Windley v. McCliney, supra.* Furthermore, it is the purpose of a temporary injunction to maintain as nearly as possible the *status quo. Roberts v. Cameron,* 245 N.C. 373, 95 S.E. 2d 899. Provision should have been made for the two factions to share the use and possession of the church properties on an equal basis.

The Superior Court will modify the orders appealed from in accordance with this opinion. In all other respects the orders are affirmed.

Modified and affirmed.