THE BOARD OF PROVINCIAL ELDERS OF THE SOUTHERN PROVINCE OF THE MORAVIAN CHURCH, OR UNITAS FRATRUM v. DAVID R. JONES AND THE BIBLE MORAVIAN CHURCH.

(Filed 6 March, 1968.)

**1. Appeal and Error § 6—**

An appeal to the Supreme Court lies from an order granting an interlocutory injunction.

**2. Injunctions § 13—**

The purpose of an interlocutory injunction is to preserve the status quo of the subject matter of the suit pending trial on the merits.

**3. Injunctions § 12;    Appeal and Error § 58—**

The sole question before the trial court at a hearing upon an order to show cause is whether an injunction should issue to restrain defendant from the action complained of pending final hearing on the merits, and upon appeal of the trial court's ruling, the Supreme Court is limited to a determination of the same question.

**4. Appeal and Error § 58—**

Upon appeal from an order granting an interlocutory injunction, the Supreme Court is not bound by the findings of fact made by the court below but may review the evidence and find facts for itself.

**5. Injunctions § 12;    Appeal and Error § 58—**

Neither the findings of fact or the conclusions of law of the trial court upon the hearing of an application for an interlocutory injunction, nor the findings or conclusions of the Supreme Court on appeal, are binding upon, or are to be considered by, the Superior Court at the final hearing of the matter.

**6. Injunctions § 13—**

The burden is upon the applicant for an interlocutory injunction to prove a probability of substantial injury from the continuance of the activity complained of pending the final determination of the action.

**7. Injunctions § 13—**

An injunction *pendente lite* should not be granted where there is a serious question as to the right of defendant to engage in the activity complained of and where to restrain defendant pending the final determination of the matter would cause defendant greater damage than plaintiff would sustain from the continuance of the activity.

**8. Same;   Religious Societies and Corporations § 3;    Trademarks and Trade-Names—**

In a hearing upon the Board of Elders' application for an interlocutory injunction to restrain defendants from using the names "Moravian" or "Unitas Fratrum" in connection with their religious activities, the granting of an injunction *pendente lite is held* erroneous in the absence of a showing that plaintiff would probably suffer substantial injury to its reputation, doctrine, membership or contributions.

PARKER, C.J., dissenting.

HIGGINS and SHARP, JJ., join in the dissenting opinion.

APPEAL by defendants from *Johnston, J.* in Chambers in FORSYTH, 17 June 1967, docketed and argued as case No. 463 at Fall Term 1967.

This is an action to enjoin the defendants from using the names "Moravian" or "Unitas Fratrum" in connection with any religious or church activity and to compel the defendant church to delete the word "Moravian" from its corporate name. Upon an application by the plaintiff for the issuance of a temporary injunction, the defendants were ordered to appear and show cause. why "the injunction as prayed for by the plaintiff should not be granted until the final determination of this cause." Following such hearing, Johnston, J., entered the order from which appeal is taken and which provided:

"IT IS ORDERED, ADJUDGED AND DECREED that the named defendants and each of them, and all persons acting in concert with them or under their direction or the directions of any of them, and all other persons to whom notice and knowledge of this order may come are until the further orders of this Court, hereby enjoined and restrained from using the name 'Moravian' or 'Unitas Fratrum' in connection with any religious or church activity."

At the show cause hearing, the court considered the pleadings of the parties as affidavits and other evidence consisting of oral testimony and documents introduced as exhibits. The order recites. that upon the consideration of such evidence, the following appeared to the court (summarized, except as indicated):

The plaintiff was chartered by a special act of the Legislature as the governing body for the regulation of the Moravian Churches in the Southern Province, including North Carolina. There are 47 such churches, all except one bearing the name "Moravian." The defendant church is incorporated in North Carolina, having its principal place of business in Winston-Salem, which is within the territorial limits of the plaintiff. The defendant was organized under the name "The Bible Moravian Church," without the knowledge or consent of the plaintiff and it is not affiliated in any manner with the plaintiff or with any congregation represented by the plaintiff. The defendant Jones

is conducting services "under the name of The Bible Moravian Church in Forsyth County * * * and the said defendant is not affiliated in any manner whatsoever with the plaintiff or any of the Moravian Churches represented by the plaintiff." All churches in the United States which bear the name "Moravian," with the sole exception of the defendant church, are affiliated with either the Northern Province or the Southern Province of the Moravian Church in America and were organized under the authority of the Synods of these Provinces and are governed by the Board of Provincial Elders of the Province in which located. "[T]he name of the Moravian Church is of great value, not only because of the business carried on and property held in that name, but also because thousands of members associate with the name the most sacred of their personal relationships in the holiest of their family traditions; that the plaintiff and the Moravian Churches represented by the plaintiff actively support by contributions and other means its affiliated educational institutions * * * and that the plaintiff and all of the Moravian Churches affiliated with the plaintiff are dependent upon the contributions of their members and the general public for means to carry on their work."

Upon these findings, the court below concluded:

"[T]herefore, the plaintiff is entitled to protection against the use of the same name by the defendants; that the unauthorized use of the name of the Moravian Church by the defendants in this action will result in irreparable injury and lasting damage to the plaintiff and the many congregations of the Moravian Churches of the Southern Province of the Moravian Church in America, all of whom are organized and exist under one unified body and have been known and recognized for many years for their unity. * * *"

The complaint, introduced as an affidavit, alleges (summarized, except as indicated):

"The Moravian Church in America is organized with a hierarchial form of government and is divided into two provinces, the Northern Province and the Southern Province." The plaintiff is the highest administrative authority for the Moravian Churches in the Southern Province and is the governing board for the regulation of their temporal concerns. All 47 Moravian

congregations which comprise the Southern Province were organized under the authority of the Synod of the province and each, with the exception of "The Little Church on the Lane" in Charlotte, includes "Moravian" in its name. Two of these churches are in Virginia, two in Florida and the remainder in North Carolina. The defendant church was incorporated in North Carolina on 3 April 1967, with its principal place of business in Winston-Salem, which is "within the territorial limits of the Southern Province of the Moravian Church." The corporate defendant was organized under the name "The Bible Moravian Church" without the knowledge or consent of the plaintiff. The corporate defendant is not affiliated in any manner whatsoever with the plaintiff or with any of the congregations represented by the plaintiff. With the exception of the corporate defendant, all congregations of churches in the United States bearing the name "Moravian" are affiliated with either the Northern Province or the Southern Province of the "Moravian Church in America," and were organized under the authority of the Synod of such provinces and governed by the Board of Provincial Elders of the province in which located.

The Southern Province, which had its beginning in 1753, includes 47 Moravian Churches, with more than 22,000 members and substantial property holdings. "The name of the church is of great value, not only because of the business carried on and property held in that name, but also because of thousands of members associate with the name the most sacred of their personal relationships and the holiest of their family traditions." The Southern Province is affiliated with and supports a vast network of mission fields in various parts of the world, and "actively supports by contributions and other means its affiliated educational institutions, Salem College in Winston-Salem and Moravian College in Bethlehem, Pennsylvania, as well as other educational and charitable causes. The plaintiff and all of the Moravian Churches affiliated with the plaintiff are dependent upon the contributions of their members and the general public for means to carry on their work and, therefore, the plaintiff is entitled to protection against the use of the same name by the defendants and the threatened confusion of and misleading of the public with the attendant loss or lessening of contributions and donations upon which the veritable life and charitable activity of the plaintiff depends.

"The unauthorized use of the name of the Moravian Church by the defendants in this action will result in irreparable in-

jury and lasting damage to the plaintiff and the many congregations of Moravian Churches of the Southern Province of the Moravian Church of America, all of whom are organized and exist under one unified body and have been known and recognized for many years for their unity. A large portion of any community is not well informed about ecclesiastical matters, and for defendants to use the name Moravian Church will enable them to appear in the eyes of the community as a part of the Moravian Churches of the Southern Province and will result in much confusion and dispute with respect to contributions and support of colleges, societies, foundations, archives, missionaries, and provincial women's organizations carried on or sponsored by the aforesaid Moravian Churches of the Southern Province."

The defendants filed a joint answer. It admits the incorporation and organization of the defendant church under the name "The Bible Moravian Church" without the knowledge or consent of the plaintiff. It admits that neither the corporate defendant nor the individual defendant is affiliated in any manner whatsoever with the plaintiff or with any congregation represented by the plaintiff. The answer admits that "the name of the church is of great value, not only because of the business carried on and property held in that name, but also because of thousands of members associate with the name the most sacred of their personal relationships and the holiest of their family traditions." It also admits the allegations of the complaint with reference to the missionary, educational and charitable activities carried on by the plaintiff and its affiliated congregations. It denies that the plaintiff has the right to exclude other congregations in its territorial limits from using "Moravian" in the name of their churches, and denies that the plaintiff will suffer damage by the use by the corporate defendant of its name "The Bible Moravian Church."

For further answers and defenses, the defendants allege: (1) The corporate defendant has acquired the right to use its name by the issuance to it of its corporate charter; (2) to grant the injunction prayed for by the complaint would violate the right of the defendants guaranteed to them by Article I, § 26, of the Constitution of North Carolina; (3) to grant the injunction prayed for in the complaint would violate the rights of the defendants guaranteed to them by the Fourteenth Amendment to the Constitution of the United States; (4) the defendants seek only to conduct religious services in accordance with their convictions, they have made no effort to mislead the public or to divert funds intended for the plaintiff, but have

openly held themselves out to be separate from the plaintiff and the plaintiff has suffered no pecuniary or other loss through the use of "Moravian" by the corporate defendant, (5) the word "Moravian" has wide usage, is descriptive of the people of a part of Czechoslovakia, is highly commercialized, especially in the community of Winston-Salem, and the plaintiff has no exclusive right to its use; (6) the use of "Moravian" in the name of their church identifies it with the worship, doctrine and ordinances constituting a precious religious heritage to the members of the defendant church.

In addition to its complaint, offered as an affidavit, the plaintiff introduced in evidence documents relating to the origin and development of the Moravian denomination and of the plaintiff and the churches affiliated with it, together with their plan of organization and internal government and their widespread missionary, educational and charitable interests and activities. The plaintiff's exhibits also show that the individual defendant, formerly the pastor of one of the churches affiliated with the plaintiff, resigned his pastorate and advised the plaintiff that he was "separating from the Moravian Church." Thereupon, his ordination as a minister was revoked by the plaintiff, or by an affiliated organization. He is now the pastor of "The Bible Moravian Church," which assembles for its services in the basement of his home. It would appear from these documents that the beliefs of the defendant Jones and those of the plaintiff concerning the infallibility of the Bible differ somewhat, but the evidence does not disclose the precise nature or extent of those differences of opinion.

Documentary evidence and oral testimony presented at the hearing indicate that in the past there have been religious bodies which used "Moravian" in their names and which were not affiliated with the plaintiff, its predecessors or associates, but these organizations presently do not exist or have discontinued the use of "Moravian" in their official names. The corporate defendant is the only church in North Carolina with the word "Moravian" in its name which is not affiliated with the plaintiff.

Evidence introduced by the defendants, in addition to their verified answer which was used as an affidavit, is to the effect that the corporate defendant has 69 members who now meet for worship services in the basement of the Jones residence. Their separation from the plaintiff has been widely publicized by them. The defendant Jones testified:

"We have separated from the Moravian Governing Synod; this has been well publicized over more than 600 radio stations

in the United States and Canada, through mimeographed statements which I have mailed out to all of the Moravian ministers, or almost all of them, to the best of my knowledge, and missionaries; it was on the front page of the Journal-Sentinel, the daily newspaper, the morning edition, in this city [Winston-Salem]; and it has been well publicized in the Bishop's circular letter, sent to all of the pastors, and circularized in many cases to individual members of the congregation; I might add that the Wachovia Moravian, the official organ for the Southern Moravian Church, South, goes free of charge to all members of the Moravian Church, South. Our offerings are free-will offerings, gathered in the services themselves, and there is no attempt made to solicit funds from the Moravian Churches or their members."

The plaintiff stipulated at the hearing on the order to show cause:

"This is not a controversy over church property; it is not a controversy over doctrine; we don't contend that the defendants have taken any of the real estate, or property of the plaintiff; it is an action to enjoin the use of the name 'Moravian' or 'Moravian Church'; that's the main action only."

*Hayes and Hayes by James M. Hayes, Jr., and W. Warren Sparrow for defendant appellants.*

*Womble, Carlyle, Sandridge & Rice by I. E. Carlyle and Charles F. Vance, Jr., for plaintiff appellee.*

LAKE, J.   The plaintiff's motion to dismiss the appeal as premature is denied. This Court has entertained many appeals from orders granting interlocutory injunction. See: *Milk Commission v. Food Stores,* 270 N.C. 323, 154 S.E. 2d 548; *Conference v. Creech,* 256 N.C. 128, 123 S.E. 2d 619; *Church v. College,* 254 N.C. 717, 119 S.E. 2d 867; *Restaurant, Inc. v. Charlotte,* 252 N.C. 324, 113 S.E. 2d 422. The order entered below denies the defendant the right to use "Moravian" in connection with their church organization and services until the final hearing in this action. The plaintiff sought this order on the ground that the use of the word "Moravian" in its name by the defendant, during this interval, would do the plaintiff irreparable injury because this name is of great value to a religious body. The plaintiff is in a poor position to contend, as it does in its motion to dismiss, that a denial to the defendants of the use of this

name, during this same period, is of no substantial importance to the defendants.

The purpose of an interlocutory injunction is to preserve the status quo of the subject matter of the suit until a trial can be had on the merits. *Huskins v. Hospital,* 238 N.C. 357, 78 S.E. 2d 116. At the time this action was instituted, the corporate defendant had come into existence and had been granted by the State a charter giving it the name "The Bible Moravian Church." It was already conducting services and engaged in other church activities under that name.

The sole question before Judge Johnston at the hearing upon the order to show cause was whether an injunction should be issued requiring the defendant to discontinue the use of the corporate defendant's name in such church services and activities from the entry of the injunction to the final hearing on the merits. *Carroll v. Board of Trade,* 259 N.C. 692, 131 S.E. 2d 483; *Whaley v. Taxi Company,* 252 N.C. 586, 114 S.E. 2d 254; *Lewis v. Harris,* 238 N.C. 642, 78 S.E. 2d 715. That is the only question before us on this appeal. *Conference v. Creech, supra.* In determining it, we are not bound by the findings of the court below but may review the evidence and make our own findings of fact. *Conference v. Creech, supra.*

Neither the findings of fact nor the conclusions of law of the trial judge, at the hearing before him on the application for the temporary injunction, are binding upon, or are to be considered by, the superior court at the final hearing of the matter. *Huskins v. Hospital, supra.* The same is true of our decision upon this appeal and our statement of the facts upon which our conclusion rests. The facts relating to the right of the defendant to call itself "The Bible Moravian Church" have not been finally determined.

It is apparent from a review of the evidence at the hearing below that the defendants are just as desirous as is the plaintiff that the public be aware of their separation from the plaintiff and its affiliated congregations. The plaintiff offered no evidence to contradict the testimony of the defendants that they gave wide publicity to the fact of the separation and have made no effort to solicit funds as an affiliate of the plaintiff. There is no evidence whatever in the record to show that any person joined the defendant church or attended any service conducted by it under the belief that it was associated with the plaintiff. There is no evidence whatever in the record to show that any contribution has been made to the defendant church by a donor under the impression that the defendant church is affiliated with the plaintiff. There is no evidence whatever in the record to show that any contribution which otherwise would have been made to the plaintiff, or to any of its affiliated organiza-

tions, has not been made by reason of the existence of the corporate defendant and its use of its corporate name.

There is no evidence whatever in the record to suggest that any service, declaration of belief or doctrine, or any other activity of either defendant has reflected upon or endangered the excellent reputation of the plaintiff and congregations affiliated with it. There is nothing in the record to indicate that either of the defendants contemplates any such action or any defamation or criticism of the plaintiff or of any organization affiliated with it. The plaintiff has stipulated that this "is not a controversy over doctrine."

There is nothing in the record to suggest that the defendants have used or contemplated any use of the term "Unitas Fratrum" (Unity of the Brethren) in or in connection with any of their activities. The only act with which they are charged by the plaintiff is the use of the word "Moravian" in their church name. The defendants admit that this name is precious to the plaintiff and the members of its affiliated churches because they "associate with the name the most sacred of their personal relationships and the holiest of their family traditions," but the defendants say that it is equally precious to them for the same reasons, they having the same religious heritage. They appeal from the order which denies them the use of this name prior to a final determination of the plaintiff's claim that it has the exclusive right to its use.

. The burden is upon the applicant for an interlocutory injunction to prove a probability of substantial injury to the applicant from the continuance of the activity of which it complains to the final determination of the action. See: *Carroll v. Board of Trade, supra; Conference v. Creech, supra; Ingle v. Stubbins,* 240 N.C. 382, 82 S.E. 2d 388; *Huskins v. Hospital, supra;* McIntosh, North Carolina Practice and Procedure, 2d ed., § 2196; 28 Am. Jur., §§ 22 and 25. G.S. 1-485(1) authorizes the granting of an application for a temporary injunction "when it appears by the complaint that the plaintiff is entitled to the relief demanded, and this relief, or any part thereof, consists in restraining the commission or continuance of some act the commission or continuance of which, *during the litigation,* would produce injury to the plaintiff." (Emphasis added.) An injunction *pendente lite* should not be granted where there is a serious question as to the right of the defendant to engage in the activity and to forbid the defendant to do so, pending the final determination of the matter, would cause the defendant greater damage than the plaintiff would sustain from the continuance of the activity while the litigation is pending. *Huskins v. Hospital, supra.*

To compel the, defendants to discontinue the use of the corporate defendant's name, pending the final determination of its right to do so, would obviously handicap the defendants greatly and would be a grave injustice to them if they should ultimately prevail in this action. In the absence of any evidence to show any enticement of members of congregations affiliated with the plaintiff into the services of the defendant church, or the attraction to it of any contribution as the result of the donor's confusion concerning its affiliation with the plaintiff, it is difficult to believe that the plaintiff, and its many worthy enterprises, could be seriously damaged by permitting the corporate defendant to use the word "Moravian" as part of its name until the trial of the action and the final determination of its right to do so.

Counsel for the plaintiff argued in this Court that for the defendants to call their church "The Bible Moravian Church" tends to create in the minds of the public the inference that the plaintiff and churches affiliated with it do not accept the authority of the Bible and, therefore, threatens to damage the plaintiff pending the outcome of this litigation. This position is inconsistent with the contention that the name of the defendant church will cause the public to believe the defendant is affiliated with the plaintiff. It would seem to indicate that the plaintiff, itself, is not clear as to how, if at all, the use of the corporate defendant's name pending the final hearing of this matter will injure the plaintiff. If there is no clear and present danger of such injury, the injunction *pendente lite* should not have been issued. "Injunctive relief is granted only when irreparable injury is real and immediate." *Hall v. Morganton,* 268 N.C. 599, 151 S.E. 2d 201. This is especially true with reference to the issuance of a preliminary injunction. *Carroll v. Board of Trade, supra;* McIntosh, North Carolina Practice and Procedure, 2d ed., § 2196; 28 Am. Jur., Injunctions, § 52.

For the reason that the evidence fails to show a reasonable probability of substantial injury to the plaintiff through use by the corporate defendant of its corporate name until its right to do so can be finally determined, we hold that it was error to grant the temporary injunction, and it should be and is hereby vacated.

Upon this appeal it is not necessary for us to determine whether the defendants have a right under either the Constitution of this State or the Constitution of the United States to name their church "The Bible Moravian Church," and we express no opinion upon that question.

It is likewise unnecessary upon this appeal to determine the ex-

tent to which the rules devised by courts of equity to regulate competition between those who trade for profit in the market place apply to those who seek contributions from the followers and friends of the Prince of Peace. It may not be amiss in such a situation to bear in mind the advice of a great lawyer of long ago to an established religious body, concerned lest it be injured by the activities of a small group of former associates: "Refrain from these men, and let them alone, for if this counsel or this work be of men, it will come to naught, but if it be of God, ye cannot overthrow it." Acts 5:38.

This Court has not decided the question of whether an injunction may be issued to forbid one church to use a name similar to that of another church. We do not now decide that question. The leading case supporting the issuance of such injunction is *Purcell v. Summers,* 145 F. 2d 979. There, former members of the Methodist Episcopal Church, South, dissatisfied with its merger with two other Methodist bodies to form the present Methodist Church, organized a. new body which they named "The Methodist Episcopal Church, South," — the exact name of the former organization so merged into the present Methodist Church. The Circuit Court of Appeals for the Fourth Circuit held they could and should be enjoined, at the suit of bishops of the Methodist Church, from using the name "Methodist Episcopal Church, South." The ground for the decision was that for the defendants to use the name would be unfair competition, confusing to prospective communicants and contributors and likely to cause litigation over property rights. Under those circumstances, the court there said the "principles ordinarily applied. in the case of business and trading corporations are equally applicable in the case of churches and other religious and charitable organizations."

One of those principles applied in the case of business and trading corporations is that an injunction will not issue to prevent use by the defendant of a generic or descriptive word contained in the name of the plaintiff, at least in the absence of fraudulent intent. 52 Am. Jur., Trademarks, Tradenames and Trade Practices, § 130. Thus in *Purcell v. Summers, supra,* the court said:

> "It is said that the words 'Methodist' and 'Episcopal' are generic terms and that defendants have the right to use them for that reason, but defendants are not proposing to use either of these words in a new name so different from the old that no confusion could result. They are using the precise name of the old church; and the question is, not whether they have the right

BOARD OF ELDERS *v.* JONES.

to use 'Methodist' or 'Episcopal' in a new name so constructed as to avoid confusion, but whether they have the right to use the old name in a way that amounts, as we think it does, to implied misrepresentation to the damage of plaintiffs."

The preliminary injunction, granted below, forbids the defendant church to use in its name the word "Moravian," irrespective of whether other words are used with it in the name so as to avoid misrepresentation and confusion. This goes beyond the decision in *Purcell v. Summers, supra.* Surely, some combination of words, including "Moravian," could be found which would convey no impression of affiliation with the plaintiff. Whether the addition of the word "Bible" is sufficient for this purpose cannot be determined from the evidence in this record. The argument before us by counsel for the plaintiff would lend support to that view. Of course, neither he nor we intend to suggest thereby that the plaintiff and its affiliates do not accept, properly interpret, and follow the Bible. That is not a question proper for courts to determine, but the question of whether the full name of the defendant church is such as to give to prospective communicants and contributors a false impression that the defendant church is an affiliate of the plaintiff is a question for judicial determination in litigation of this kind. It cannot be determined upon this record.

It also cannot be determined upon this record whether the word "Moravian," used in connection with a church, is a generic, descriptive term primarily signifying acceptance of certain doctrines, sacramental ceremonies and theological beliefs, or is a word which primarily signifies an affiliation with the plaintiff and its associated groups. Undoubtedly, it is a word which members of the defendant church, as well as those belonging to congregations affiliated with the plaintiff, revere and use with affection as it is associated with "the most sacred of their personal relationships and the holiest of their family traditions" — to use the language of *Purcell v. Summers, supra,* quoted in the plaintiff's complaint.

The defendants should not be enjoined from their use of "Moravian" in the name of their church until the matter is finally heard and the exclusive right of the plaintiff, and its affiliated groups, to use it is established by evidence.

Reversed.

PARKER, C.J., dissenting: The Southern Province of the Moravian Church had its beginning with the settlement of Bethabara

in 1753, Bethania in 1760, and Salem in 1766. The Province has grown to include forty-seven Moravian Churches with more than twenty-two thousand members. All the congregations of the churches of the United States which bear the name "Moravian," with the sole exception of defendant, "The Bible Moravian Church," are affiliated either with the Northern Province or Southern Province of the Moravian Church in America, and said congregations were organized under the authority of the Synods of the said Provinces and are governed by the Board of Provincial Elders of the Province in which they are located.

The corporate defendant was organized with its principal place of business designated as Winston-Salem, North Carolina, being within the territorial limits of the Southern Province of the Moravian Church. The said defendant was organized under the name "The Bible Moravian Church" without either the knowledge or the consent of the plaintiff, and the said defendant is not affiliated in any manner whatsoever with the plaintiff or any of the Moravian congregations represented by the plaintiff.

In the leading case of *Purcell v. Summers,* 145 F. 2d 979, the Court held, as stated in the first headnote:

> "In order to prevent litigation, confusion, and to prevent new church from making old church appear as an intruder, the Methodist Church, composed of a union of the Methodist Episcopal Church, the Methodist Episcopal Church, South, and the Methodist Protestant Church, to which union 37 of the 38 Conferences of the Methodist Episcopal Church, South, had assented, as successor of the Methodist Episcopal Church, South, was entitled to an injunction restraining dissident former members from using the name Methodist Episcopal Church, South, as the name of a new rival church organization."

I think that what the Court said in that case, speaking through Parker, J., is relevant and controlling here:

> "Upon these facts, we do not think that there can be any doubt as to the right of plaintiffs to the injunction prayed. The use by one organization of the name of another for the purpose of appropriating the standing and good will which the other has built up is a well recognized form of the wrong known to the law as unfair competition, against which courts of equity have not hesitated, in any jurisdiction, to use the full power of the injunctive process. The general rule with adequate citation of

supporting authority was thus stated by the Supreme Court of South Carolina in the comparatively recent case of *Planters' Fertilizer & Phosphate Co. v. Planters' Fertilizer Co.,* 135 S.C. 282, 133 S.E. 706, 708:

" 'A court of equity has jurisdiction to enjoin the use of the same name by another corporation, or the use of a name so nearly similar as to be misleading, thereby injuring its business. [Citing authority.]'

\*    ·    \*        \*

"We have no doubt that these principles ordinarily applied in the case of business and trading corporations are equally applicable in the case of churches and other religious and charitable organizations; for, while such organizations exist for the worship of Almighty God and for the purpose of benefiting mankind and not for purposes of profit, they are nevertheless dependent upon the contributions of their members for means to carry on their work, and anything which tends to divert membership or gifts of members from them injures them with respect to their financial condition in the same way that a business corporation is injured by diversion of trade or custom. As was well said in the case of *Master et al. v. Machen et al.,* 35 Pa. Dist. & Co. R. 657, which involved the use of the name of one of the branches of the Presbyterian Church:

" 'The close similarity raises an inference of resulting confusion. This confusion is bound to react to the disadvantage of the plaintiff. When we say disadvantage, we are not restricting ourselves to the spiritual side alone. We are aware that churches are established for the promulgation of faith under the regulations of definite religious organizations, but we are also aware that such organizations, through some administrative channels, own property, real and personal, and require funds to carry on their purposes. These funds come from contributions, gifts, donations, and bequests. No large church organization could live by faith alone, and if its income were stopped or substantially reduced, its scope for spreading its religion, as enunciated by its doctrines, would be seriously hampered. Thus, any project or movement of another religious organization using a name so similar to an established one as to create confusion and thereby interfering with the spiritual and final progress of that established church and its agencies is inequitable and will be restrained.'

"The question of protecting by injunction an eleemosynary or charitable organization, as distinguished from a business cor-

poration, from unfair competition in the use of its name, was before us in *Grand Lodge I. B. P. O. Elks v. Grand Lodge I. B. P. O. Elks,* 4 Cir., 50 F. 2d 860, 862, in which we examined the question thoroughly and laid down the rule, with the supporting authorities, as follows:

"'It is well established that a benevolent, fraternal or social organization will be protected in the use of its name by injunction restraining another organization from using the same or another name so similar as to be misleading. [Citing authority.] The reasons underlying the rule are thus stated in Nims on Unfair Competition and Trademarks (3d Ed.) § 86: "The fact that a corporation is an eleemosynary or charitable one and has no goods to sell, and does not make money, does not take it out of the protection of the law of unfair competition. Distinct identity is just as important to such a company, oftentimes, as it is to a commercial company. Its financial credit — its ability to raise funds, its general reputation, the credit of those managing it and supporting it, are all at stake if its name is filched away by some other organization, and the two become confused in the minds of the public." ' ":

The defendants contend that the word "Moravian" is a generic term and that they have the right to use it for that reason. That is a deceptively simple argument. The defendants are not proposing to use the word in a name so different from the plaintiff that no confusion would result. The word "Bible" in defendants' corporate name does not tend to distinguish the defendants from the other Moravian Churches, but tends to emphasize the similarity by following the pattern of names used by the plaintiff in designating its congregations, such as Advent Moravian Church, Immanuel Moravian Church, Home Moravian Church, etc.

In my opinion it is manifest from the evidence and findings of fact of the trial judge that the name "The Bible Moravian Church" adopted by the defendants is so similar to the old and firmly established name of plaintiff that confusion will certainly result to the disadvantage of the plaintiff. "We are aware that churches are established for the promulgation of faith under the regulations of definite religious organizations, but we are also aware that such organizations, through some administrative channels, own property, real and personal, and require funds to carry on their purposes. These funds come from contributions, gifts, donations, and bequests. No large church organization could live by faith alone, and if its income were stopped or substantially reduced, its scope for spreading

its religion, as enunciated by its doctrines, would be seriously hampered." *Purcell v. Summers, supra,* quoting *Master et al. v. Machen et al.,* 35 Pa. Dist. & Co. R. 657. I believe that the danger of irreparable injury to the plaintiff is real and immediate, and that the defendants should be restrained. Defendants would sustain only slight damage if the injunction were granted. Upon the evidence and the findings of fact of the trial judge, I vote to affirm Judge Johnston's order restraining defendants, pending a final determination of the matter, "from using the name 'Moravian' or 'Unitas Fratrum' in connection with any religious or church activity."

HIGGINS and SHARP, JJ., join in this dissent.