WAFF BROS., INC. v. BANK OF NORTH CAROLINA, N.A., DAVIS SAWYER, SHERIFF OF PASQUOTANK COUNTY; CAROLINA-ALBE-MARLE CORPORATION; VACATION PROPERTIES, INC., AND SPENCER BERGER

No. 63

(Filed 29 January 1976)

**1. Appeal and Error § 58— preliminary injunction — appellate review — power of court to make its own findings**

Upon appeal from an order granting or refusing a preliminary injunction, the Supreme Court is not bound by the findings of fact, or lack of such findings, by either of the lower courts, but may review the evidence and make its own findings.

**2. Injunctions § 12— preliminary injunctions — when granted**

Ordinarily a preliminary injunction will be granted pending trial on the merits (1) if there is probable cause for supposing that plaintiff will be able to sustain his primary equity, and (2) if there is reasonable apprehension of irreparable loss unless injunctive relief be granted, or if in the court's opinion it appears reasonably necessary to protect plaintiff's right until the controversy between him and the defendant can be determined.

**3. Injunctions § 13— preliminary injunctions — irreparable harm**

In an action by the holder of a judgment constituting a lien on land to enjoin an execution sale of the land to satisfy another judgment constituting a prior lien on the land, there was a sufficient showing of reasonable apprehension of irreparable harm to the plaintiff if the land be sold to satisfy the other judgment where plaintiff alleged that an execution sale of the land will not produce an adequate sum to pay any appreciable portion of plaintiff's judgment, and defendants conceded that the land did not have a fair market value sufficient to pay the amount of both judgments.

**4. Judgments §§ 52, 54; Mortgages and Deeds of Trust § 16— conveyance of land — assignment of judgment to grantee — no merger of lien**

Where a judgment was obtained against a corporation establishing a lien on land owned by the corporation, the corporation then conveyed the land to a second corporation, the second corporation thereafter paid the owner of the judgment a portion of the amount owed on the judgment, took from the owner an assignment of the

judgment and gave the owner its note for the balance due on the judgment, nothing else appearing, the second corporation became a debtor to the owner of the judgment upon its note, but not upon the judgment, and, nothing else appearing, the judgment cannot be deemed to have been paid or the lien thereof to have been merged into the fee simple estate owned by the second corporation in the land.

5. **Mortgages and Deeds of Trust § 16— acquisition of mortgage debt by owner of mortgaged property — primary liability — merger**

When the owner of mortgaged land, who is primarily liable for the payment of the debt secured by the mortgage, becomes also the owner of the indebtedness secured by the mortgage, and the security interest incident thereto, the debt is deemed paid and the land is discharged from the lien of the mortgage; the rule is not the same, however, where the owner of the mortgaged property is not personally liable for the payment of the mortgage debt, but in such case the intention of the parties to the transfer of the indebtedness controls.

6. **Corporations § 1— alter ego of dominant shareholder**

Where corporations are so operated that they are mere instrumentalities or alter egos of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, or for the purpose of fraud, the corporate entities will be disregarded and the corporations and the shareholder treated as one and the same.

7. **Injunctions § 13; Corporations § 1; Judgments § 52— restraining execution sale under judgment lien — assignment of judgment to corporation — alter ego of judgment debtor — extinguishment of judgment debt and lien**

In an action by the holder of a junior judgment lien against land owned by a corporation to enjoin an execution sale of the land to satisfy a judgment constituting a prior lien on the land, plaintiff showed probable cause to believe that he may be able to establish at a hearing on the merits that the prior judgment lien has been extinguished where it was not controverted that the corporate judgment debtor conveyed the land to a second corporation, the owner of the prior judgment lien assigned his judgment and lien to the second corporation, and the second corporation assigned the judgment to defendant bank, and where defendant's uncontroverted affidavit was to the effect that the second corporation was the mere alter ego of the first corporation, since if the two corporations must be regarded as one and the same person, the transfer of the judgment constituting the prior lien to the second corporation had the same effect as a transfer thereof to the first corporation which was the judgment debtor, and the judgment debt and judgment lien were thereby extinguished and could not be transferred to defendant bank.

8. **Injunctions § 13; Marshalling — execution sale — two judgment debtors — resort to other property to satisfy claim**

A preliminary injunction should have been issued in this action by the holder of a junior judgment lien on a corporation's land to enjoin an execution sale of the land pursuant to a senior judgment

lien which has been assigned to defendant bank where plaintiff's uncontroverted affidavit was to the effect that defendant bank has other security for its claim against the corporation from which it can obtain full payment and satisfaction for such claim without resorting to the land in question, which is plaintiff's only security for its claim.

ON *certiorari* to the Court of Appeals to review its decision, reported in 25 N.C. App. 517, 214 S.E. 2d 261,. affirming the order of *Lanier, J.,* vacating and dissolving a temporary restraining order entered by James, J.

The verified complaint, considered as an affidavit, alleges for a first cause of action: The plaintiff, by virtue of a judgment against Vacation Properties, Inc., has a lien on a described tract of land in Pasquotank County containing 48.672 acres; the defendant Sheriff is advertising the said land for sale under an execution issued upon a judgment in favor of F. Richard Quible against Vacation Properties, Inc., which judgment the defendant claims as assignee and which, when entered, established a lien upon the said land prior to the lien of the plaintiff's judgment; the lien of the Quible judgment was extinguished by the assignment of this judgment to the defendant bank's predecessor in interest, Carolina-Albemarle Corporation, which corporation, at the time of such assignment, was the record owner of the fee in the land; in consequence of the extinguishment of the lien of the Quible judgment, the judgment of the plaintiff has become a first lien upon the said land; if the execution sale so advertised be not enjoined, the plaintiff's security will be lost and the plaintiff will be irreparably damaged, for which damage it has no adequate remedy at law.

For a second cause of action, the complaint alleges the above facts and: The defendant bank is the beneficiary of a deed of trust conveying approximately 500 acres of land, including the said 48.672 acre tract, which deed of trust secures the claim of the defendant bank asserted by virtue of the Quible judgment and other indebtedness owed it by Vacation Properties, Inc., and by Carolina-Albemarle Corporation; the defendant bank, by pursuing its rights under the said deed of trust, can obtain complete satisfaction of all its claims secured thereby without resorting to the 48.672 acre tract, which is the plaintiff's only security; the sale of the 48.672 acre tract, pursuant to the execution issued on the Quible judgment, will not produce an amount adequate to pay "any appreciable portion of plain-

tiff's judgment claim"; the court should exercise its equitable powers and order a marshalling of assets requiring the defendant bank to proceed against its other security.

The complaint further alleges, as to each such cause of action, that Vacation Properties, Inc., and Carolina-Albemarle Corporation are wholly owned and controlled by the defendant Berger, the sole stockholder and chief executive officer of each corporation, that both corporations have been used by Berger as his alter ego and have been used by Berger and the defendant bank "in an effort to extinguish the valid lien of plaintiff * * * by purporting to assign to defendant bank" the Quible judgment after its extinguishment and that the acts and transactions on the part of the two corporations and Berger "are and were in reality acts and transactions by one and the same party."

The prayer of the complaint is: (1) That the defendant sheriff be enjoined from further proceeding with the execution sale, (2) that the court declare the lien of the Quible judgment has been extinguished, and (3) that, if the assignment of the Quible judgment be adjudged valid, the court exercise its equitable powers and order a marshalling of assets so as to require the bank to proceed against its other security for the satisfaction of its claims against defendants Vacation Properties, Inc., and Carolina-Albemarle Corporation.

A temporary restraining order restraining the execution sale was entered by James, J., 27 February 1974, the defendants being directed to show cause why such order should not be continued to the trial of the action. The matter came on to be heard before Lanier, J., upon the show cause order and was heard "upon the complaint, the affidavits, written briefs and oral arguments." It appearing to the court that the plaintiff was not entitled to have the restraining order continued until the final determination of the action, it was vacated and dissolved, but the plaintiff having appealed, the restraining order was continued in effect pending the determination of the appeal.

The Court of Appeals affirmed on the ground that there was a "complete failure of a showing by plaintiff that it will be irreparably damaged if injunctive relief is not granted," the Court of Appeals saying, "Maybe a sale will satisfy both" judgments, the plaintiff's evidence being deemed by the court

"silent upon the question." The Court of Appeals further said, "We do not need to decide whether plaintiff has established probable cause to believe that it will prevail in the final determination of this case because the failure to establish the probability of irreparable harm is sufficient to support the denial of injunctive relief."

In the Court of Appeals, and upon the further review in this Court, the defendants join in the plaintiff's prayer that it be presently determined whether the lien of the Quible judgment was extinguished by the assignment of that judgment to Carolina-Albemarle Corporation.

In addition to the complaint, offered and considered as an affidavit, other affidavits and exhibits offered at the show cause hearing disclose the following sequence of events which are not controverted:

(1) On 26 March 1970, Selvie H. James and wife conveyed to Vacation Properties, Inc., a tract of land in Pasquotank County containing approximately 500 acres, including the 48.672 acre tract here in controversy. On 6 April 1970, Vacation Properties, Inc., executed and delivered a purchase money deed of trust conveying the 500 acre tract, exclusive of the 48.672 acre tract.

(2) On 18 December 1970, plaintiff filed a claim of lien upon the said 500 acre tract in the amount of $193,987.62 for labor and materials.

(3) On the same date (18 December 1970), Quible filed a claim of lien against the same tract in the amount of $63,182.91 for labor and materials.

(4) On 26 May 1972, judgment was rendered in the Superior Court of Pasquotank County in favor of the plaintiff against Vacation Properties, Inc., adjudging that the plaintiff recover of Vacation Properties, Inc., $193,987.62 with interest from 15 November 1970 and further adjudging that plaintiff's lien in that amount was effective as of 9 April 1970 and enforceable by sale of the described land.

(5) On the same date (26 May 1972), judgment was rendered in the Superior Court of Pasquotank County in favor of Quible against Vacation Properties, Inc., adjudging that Quible recover of Vacation Properties, Inc., the amount of $63,182.91 with interest from 30 October 1970 and further adjudging that

Quible's lien in that amount was effective as of 28 February 1970 and enforceable by sale of the described property (thus establishing the Quible lien as prior to the lien of the plaintiff).

(6) On 15 April 1973, Vacation Properties, Inc., conveyed to Carolina-Albemarle Corporation the said tract of 500 acres, including the 48.672 acre parcel here in controversy.

(7) On 30 July 1973, the purchase money deed of trust given as security for the balance due Selvie H. James and conveying to the trustee named therein the 500 acre tract, *"less and except"* the 48.672 acre tract here in controversy, was foreclosed and the land therein described was conveyed by the trustee to Carolina-Albemarle Corporation, assignee of Berger, who had become the last and highest bidder at such foreclosure sale, thus making Carolina-Albemarle Corporation the owner of the fee of the entire 500 acre tract, including the 48.672 acre tract here in controversy, subject to the plaintiff's lien against the 48.672 acre tract and to the Quible lien thereon if the Quible lien remained in effect.

(8) On 28 August 1973, Carolina-Albemarle Corporation executed a deed of trust upon the 500 acre tract, "less and except" the 48.672 acre tract here in controversy, to secure payment of a note to the defendant bank.

(9) On 13 November 1973, Carolina-Albemarle Corporation paid to Quible $20,000 upon the Quible judgment and for the balance thereof gave Quible its note secured by a deed of trust on land other than the 48.672 acre tract here in controversy. The $20,000 so paid to Quible was loaned to Carolina-Albemarle Corporation by the defendant bank.

(10) On the same date (13 November 1973), Quible assigned the Quible judgment to Carolina-Albemarle Corporation.

(11) Also on the same date (13 November 1973), Carolina-Albemarle Corporation assigned to the defendant bank "all rights of the plaintiff (Quible)" in and to the Quible judgment.

(12) Thereafter, execution was issued, at the instance of the defendant bank, under the Quible judgment, against the 48.672 acre tract here in controversy.

*White, Hall, Mullen & Brumsey by Gerald F. White and William Brumsey III for plaintiff.*

*Ellis, Hooper, Warlick, Waters & Morgan by Harold L. Waters and John D. Warlick, Jr., for defendant Bank of North Carolina.*

LAKE, Justice.

The sole question before us is whether Judge Lanier erred in concluding and ordering that the temporary restraining order, restraining the sale under execution of the land in question, should be vacated so as to permit the defendant sheriff to sell such property prior to the hearing of this matter on its merits.

[1]  In determining that question, we are not bound by the findings of fact, or lack of such findings, by either of the lower courts, but may review the evidence and make our own findings of fact. *Setzer v. Annas,* 286 N.C. 534, 212 S.E. 2d 154; *Board of Elders v. Jones,* 273 N.C. 174, 159 S.E. 2d 545, 37 A.L.R. 3d 262; *Conference v. Creech* and *Teasley v. Creech and Miles,* 256 N.C. 128, 123 S.E. 2d 619. Upon the final hearing of the matter, neither our findings of fact upon this appeal nor the findings or conclusions of the Court of Appeals, or of the trial judge at the hearing upon the order to show cause why the restraining order should not be continued, are to be considered by the Superior Court. *Board of Elders v. Jones, supra;* Strong, N. C. Index 2d, Injunctions, § 12. All such findings of fact relate solely to the question of whether a preliminary injunction should be issued staying the sale of the property until the final determination of the merits of the matter. For that purpose we have reviewed the record and determine the facts to be as set forth above in our statement of the facts.

[2]  As this Court, speaking through Justice Clifton Moore, said in *Conference v. Creech* and *Teasley v. Creech and Miles, supra,* "Ordinarily a temporary injunction [or a preliminary injunction] will be granted pending trial on the merits, (1) if there is probable cause for supposing that plaintiff will be able to sustain his primary equity, and (2) if there is *reasonable apprehension* of irreparable loss unless injunctive relief be granted, or if in the court's opinion it appears reasonably neces-

sary to protect plaintiff's right until the controversy between
him and the defendant can be determined." (Emphasis added.)

[3]   The Court of Appeals erred in its conclusion that there has
been a "complete failure of a showing by plaintiff that it will
be irreparably damaged if injunctive relief is not granted."
In its brief in this Court, the appellee bank concedes: "While,
as the Court of Appeals stated * * * a showing by Plaintiff
of being irreparably damaged is lacking, during the entire pro-
ceeding in the Trial Court, it was understood that the 48 acres
tract did not have a fair market value sufficient to equal or
exceed the total amount of the Quible and Waff judgments.
Also upon any future hearing on the merits Defendant Ap-
pellee will not, unless there be substantial change in economic
conditions, contend that the fair market value is of such magni-
tude." The complaint of the plaintiff, considered by the trial
court as an affidavit, states: "Plaintiff alleges on information
and belief that the sale of said property under execution will
not produce adequate sums to pay any appreciable portion of
plaintiff's judgment claim of $193,987.62 with interest thereon
from November 15, 1970." We, therefore, conclude that there
was a sufficient showing of reasonable apprehension of irrepa-
rable harm to the plaintiff if the land in question be sold under
execution issued on the Quible judgment, and we turn to the
question of whether there is probable cause for supposing that
the plaintiff will be able to sustain its primary equity.

[4]   The plaintiff contends that the land cannot lawfully be
sold under the execution issued upon the Quible judgment for
the reason that the Quible judgment has been paid and the
lien thereof extinguished. Quible obtained his judgment against
Vacation Properties, Inc., the judgment establishing that Quible
was entitled to recover from Vacation Properties, Inc., $63,-
182.91 and that a lien therefor, prior to the plaintiff's lien,
extended to the land in question. Vacation Properties, Inc., then
conveyed the land to Carolina-Albemarle Corporation. Such
conveyance was, as a matter of law, subject to such lien, but
the record does not show that Carolina-Albemarle Corporation
assumed liability for the payment of the Quible judgment. Thus,
nothing else appearing, Carolina-Albemarle Corporation did
not become personally liable to Quible upon the judgment.
Thereafter, Carolina-Albemarle Corporation paid to Quible
$20,000 upon the Quible judgment, took from Quible an assign-
ment of the judgment and executed and delivered to Quible

its note for the balance due on the judgment, which note it secured by a deed of trust upon other land. Thereby, nothing else appearing, Carolina-Albemarle Corporation became a debtor to Quible upon its note, but not upon the judgment. Under these circumstances, nothing else appearing, the Quible judgment cannot be deemed to have been paid or the lien thereof to have been merged into the fee simple estate owned by Carolina-Albemarle Corporation in the land here in question.

The owner of a judgment against another may assign to a third person such judgment and the lien thereof without impairing the validity of either. Clearly, this is what Quible and Carolina-Albemarle Corporation intended to do. Had Carolina-Albemarle Corporation not been the owner of the land in question and had it been wholly unrelated to Vacation Properties, Inc., the Quible judgment and the lien thereof would, unquestionably, have remained in full force and effect following this transaction and would have been assignable by Carolina-Albemarle Corporation to the defendant bank.

We turn now to the effect, if any, of the fact that Carolina-Albemarle Corporation, at the time it acquired the Quible judgment, was the owner of the fee simple estate in the land in question by virtue of a prior conveyance to it from Vacation Properties, Inc.

[5] As is said in Webster, Real Estate Law In North Carolina, § 365, the lien of the Quible judgment, when acquired by Carolina-Albemarle Corporation, was "in the nature of a statutory mortgage." When the owner of mortgaged land, who is primarily liable for the payment of the debt secured by the mortgage, becomes also the owner of the indebtedness secured by the mortgage, and the security interest incident thereto, the debt is deemed paid and the land is discharged from the lien of the mortgage. *Hussey v. Hill,* 120 N.C. 312, 26 S.E. 919. In Tiffany on Real Property, 3d Ed, § 1482, it is said:

> "While, as above stated, the question of merger vel non is ordinarily to be determined with reference either to the intention or the interest of the party in whom the two interests are vested, there may be circumstances under which neither of these considerations can be given effect. Such is the case when one who is primarily liable for the mortgage debt acquires the debt with the lien incidental thereto, 'takes an assignment of the mortgage,' as it is us-

ually expressed. One who is primarily liable for a debt cannot acquire the debt, that is, a claim against himself, and assert that the debt is still outstanding. The same person cannot be debtor and creditor, and the effect of his acquisition of the debt is to render it no longer existent. So when the person whose debt is secured by a mortgage, ordinarily the mortgagor himself, acquires the debt with its incidental lien, the debt being discharged, the mortgage lien is extinguished. And the case is the same when a grantee of the land assumes payment of the mortgage and thereafter acquires the mortgage debt. He being primarily liable for the debt, the debt is discharged."

The rule is not the same, however, where the owner of the mortgaged property is not personally liable for the payment of the mortgage debt. In such case the intention of the parties to the transfer of the indebtedness controls.

In *Furniture Co. v. Potter,* 188 N.C. 145, 124 S.E. 122, the facts were strikingly similar to those in the case before us. There the holder of a junior mortgage sought to enjoin the foreclosure of a senior mortgage on the ground that it had been extinguished by merger when the assignee of it purchased the equity of redemption in the mortgaged land. Justice Stacy, later Chief Justice, speaking for the Court, said:

"It is undoubtedly the general rule of law that where one who holds a mortgage on real estate becomes the owner of the fee, and the two estates are thus united in the same person, ordinarily the former estate merges in the latter. The equitable or lesser estate is said to be swallowed up, or 'drowned out,' by the legal or greater interest. But this rule does not apply where such merger would be inimical to the interests of the owner, as, for example, where it would prevent his setting up the mortgage to defeat an intermediate title—such as a subsequent lien or a second mortgage, as in the instant case—unless the parties intended otherwise; and this intention will not be presumed contrary to the apparent interests of the owner. As to whether such was intended by the parties is a question of fact; and the courts will 'permit or prevent the application of the doctrine as the same may accord with the intent of the parties and the right and justice of the matter.' " (Citations omitted.)

In Tiffany on Real Property, 3d Ed, §§ 1480 and 1481, it is said:

> "The theory on which, upon the acquisition by one person of the mortgaged land and of the mortgage debt with the incidental lien on the land, the debt, and with it the lien, may ordinarily be regarded as extinguished, would seem to be that, under such circumstances the person owning and controlling the debt can usually have no object in keeping it alive, it being in substance a claim against his own property, and he may consequently be presumed to intend that the debt shall be extinguished, a presumption to which, as tending to the simplification of titles, the courts are ready to give full effect. *In accordance with this view are the numerous decisions that the intention of the holder of the two interests is the decisive consideration, and that no merger will take place if there is proof of an intention on his part to the contrary.*\* \* \*

> "The fact that the mortgage debt with its lien is subsequently assigned by the person who has acquired the two interests has been held to show an intention against merger \* \* \*

> "It frequently happens that there is no evidence as to the intention in this regard, and in such a case equity will usually presume that the owner of the two interests intended that they should merge, or the contrary, according as merger vel non would be most for his benefit. *So a presumption against the existence of an intention to merge on the part of the owner of the two interests has been recognized when there was a junior incumbrance on the property, since the effect of a merger in such case would be to accord priority to the junior incumbrance over the claim of such owner.*" (Emphasis added.)

In Powell on Real Property, § 459, the rule is similarly stated and it is said:

> "As in the case of the acquiring mortgagee, a mortgagor is not handicapped by merger on acquiring the mortgage where intervening liens are present. Also, third parties are not prejudiced by merger, as where money is loaned to the mortgagor for the purpose of acquiring the mortgage, and the lender's equitable lien is protected

against junior claimants by keeping the acquired mortgage alive, to the extent of the advances, for his benefit."

To the same effect, see: Thompson on Real Property, § 4798; 51 AM. JUR. 2d, Liens, § 47; 53 C.J.S., Liens, § 17(5).

In *Houck v. Overcash*, 282 N.C. 623, 193 S.E. 2d 905, Chief Justice Bobbitt, speaking for the Court, said:

> " 'Where a party *primarily liable* on a judgment pays the judgment, the judgment is discharged and there can be no right of assignment.' 5 Strong, N. C. Index 2d, *Judgments*, § 54. The law applicable *when payment is made by a stranger* having no interest in the judgment is summarized in 49 C.J.S., *Judgments*, § 557, as follows: 'Although a judgment creditor is not bound to accept payment from a stranger * * * yet, where he does accept such payment, *he* is precluded from further recovery, *and the judgment will be kept alive for the stranger's benefit,* rather than extinguished when, and only when, there is an intentional agreement or understanding to this effect * * * . [T]he taking of as assignment affords unequivocal evidence of an intention not to satisfy the judgment unless it is taken so long after payment as to evidence the fact that it was only an afterthought. Such an assignment is valid and the judgment remains unextinguished in favor of a person in whose behalf it is obtained, as well where his credit is accepted as the consideration of the assignment as where it is for a payment in cash made by him." (Emphasis added.)

In the present case, the evidence is overwhelming that Carolina-Albemarle Corporation did not intend to extinguish the lien of the Quible judgment when it acquired such judgment. The rights of its assignee, the defendant bank, would, of course, be the same as those of Carolina-Albemarle Corporation had it retained the Quible judgment.

The plaintiff contends, however, that this is not the entire picture. The plaintiff's complaint, considered as an affidavit in the Superior Court, presently uncontradicted in the record and supported at least in part by a lengthy and detailed affidavit of the plaintiff's president, John Waff, alleges:

> "Defendant Carolina-Albemarle was formed by defendant Spencer Berger and at all times complained of the said defendant Carolina-Albemarle and the said defendant Vaca-

tion Properties are and were wholly owned and controlled by defendant Spencer Berger and have been used by him as his alter ego in respect to matters pertaining to the aforesaid property in Salem Township, Pasquotank County, North Carolina, and in particular said corporations have been used by the said defendant Spencer Berger and the defendant Bank in an effort to extinguish the valid lien of plaintiff against said described 48.672 acre tract by purporting to assign to defendant Bank the judgment obtained by F. Richard Quible against defendant Vacation Properties, Inc., said purported assignment being after said Quible judgment had been paid and extinguished or simultaneously with the payment and extinguishment of said Quible judgment.

"That at all times complained of the acts and transactions on the part of defendant Carolina-Albemarle, defendant Vacation Properties, and defendant Spencer Berger are and were in reality acts and transactions by one and the same party. That the acts and transactions on the part of defendant Carolina-Albemarle, defendant Vacation Properties, defendant Spencer Berger, and defendant Bank have been done by them in concert in their effort to deprive plaintiff of its valid lien on said described 48.672 acre tract of land, which in contemplation of law and in fact the transaction or transactions amount to a payment of the aforementioned Quible judgment and in consequence thereof plaintiff is now the holder of a first lien against said described 48.672 acre tract pursuant to plaintiff's aforementioned judgment against defendant Vacation Properties."

[6]   The mere fact that all of the outstanding shares of stock of each of two corporations are owned by one individual, who is the chief executive officer of each corporation, does not necessarily destroy the corporate entities so as to make the two corporations and the sole stockholder one and the same person in contemplation of the law. Where, however, the corporations are so operated that they are mere instrumentalities or alter egos of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, or for the purpose of fraud, the corporate entities will be disregarded and the corporations and the shareholder treated as one and the same person. *Henderson v. Finance Co.,* 273, N.C. 253, 160 S.E. 2d 39; *United States v. Milwaukee Re-*

*frigerator Transit Co.*, 142 F. 247; Fetcher, Cyclopedia of Corporations, §§ 41, 41.1 and 45; 18 Am. Jur. 2d, Corporations, §§ 14-17; 18 C.J.S., Corporations, § 7b.

[7] Whether Vacation Properties, Inc., and Carolina-Albemarle Corporation were, in fact, so created, controlled, dominated and used by Berger as to make Carolina-Albemarle Corporation the mere alter ego of Vacation Properties, Inc., must be determined on the final hearing of this matter on its merits. If so, the two corporations must be regarded, for the purposes of its litigation, as one and the same person. In that event, the transfer of the Quible judgment to Carolina-Albemarle Corporation had the same effect as a transfer thereof to Vacation Properties, Inc., the judgment debtor, and thereby the judgment debt and the judgment lien were extinguished under the above mentioned rule and could not, thereafter, be assigned to the defendant bank.

The uncontradicted affidavits of the plaintiff concerning the relationship between Carolina-Albemarle Corporation, Vacation Properties, Inc., and Berger are sufficient to constitute a showing of probable cause for believing that the plaintiff may, upon the final determination of the merits in the matter, prevail upon its alleged equity.

Thus, the plaintiff, for the purpose of establishing his right to a preliminary injunction, has shown probable cause to believe that, at the final hearing of the matter upon its merits, he may be able to establish that the lien of the Quible judgment upon the land in question has been extinguished, so that the land may not lawfully be sold under an execution issued upon the said judgment, and has shown a basis for reasonable apprehension that such a sale will damage the plaintiff irreparably. Consequently, the preliminary injunction should have been issued, continuing the restraining order issued by Judge James in effect until the final determination of this action.

[8] Furthermore, the plaintiff alleges in its complaint, considered as an affidavit and as yet uncontradicted, that the defendant bank has other security for its claim against Carolina-Albemarle Corporation and its claim against Vacation Properties, Inc., from which other security it can obtain full payment and satisfaction of such claims without resorting to the land here in question, which is the plaintiff's only security for its claim. As stated by Justice Bynum, speaking for this Court in

*Jackson v. Sloan,* 76 N.C. 306, "[W]hen one creditor can resort to two funds for the satisfaction of his debt, and another to one only of the funds, the former shall first resort to the fund upon which the latter has no claim, as that by this means of distribution both may be paid." See also: *Realty Co. v. Wysor,* 272 N.C. 172, 158 S.E. 2d 7; *Trust Co. v. Godwin,* 190 N.C. 512, 130 S.E. 323; *Harrington v. Furr,* 172 N.C. 610, 90 S.E. 775; *Pope and Co. v. Harris,* 94 N.C. 62. For this reason also, the preliminary injunction should have been issued, continuing in effect to the final determination of the action the restraining order entered by Judge James. Whether, in fact, the defendant bank does hold such other security for the payment of its claim is a question to be determined at the trial of the action on the merits.

The judgment of the Court of Appeals is, therefore, reversed, and the matter is remanded to the Court of Appeals for the entry by it of a judgment reversing the order of Judge Lanier and remanding the matter to the Superior Court for the entry of a preliminary injunction restraining the sale of the land here in question under execution issued upon the Quible judgment pending the final determination of this action.

Reversed and remanded.