977 F.2d 413
 Concepcion GIOVE, Plaintiff/Appellee,
v.
Jeanne A. STANKO, Defendant,
Sheridan Enterprises Trust, Defendant/Appellant,
Western Enterprises Trust; Cara Stanko, Trust; Chris
Stanko, Trust; Michael Stanko, Trust; Elizabeth
Stanko, Trust; School of Gymnastics,
Inc., a defunct Nebraska
corporation, Defendants
River Enterprises Trust; Red Barn Trust, Defendants/Appellants,
Scotty Trust; Stanko Family Trust; Stanko Family Inc.;
Ted Daggett; Robert Spurgeon; Bruce Scott, Defendants.
Concepcion GIOVE, Plaintiff/Appellant,
v.
Jeanne A. STANKO; Sheridan Enterprises Trust, Defendants/Appellees,
Western Enterprises Trust; Cara Stanko, Trust; Chris
Stanko, Trust; Michael Stanko, Trust; Elizabeth
Stanko, Trust; School of Gymnastics,
Inc., a defunct Nebraska
corporation, Defendants,
River Enterprises Trust; Red Barn Trust, Defendants/Appellees,
Scotty Trust; Stanko Family Trust; Stanko Family Inc.;
Ted Daggett; Robert Spurgeon; Bruce Scott, Defendants.
Concepcion GIOVE, Plaintiff/Appellee/Cross-Appellant,
v.
Jeanne A. STANKO; Sheridan Enterprises Trust,
Defendants/Appellants/Cross-Appellees,
Western Enterprises Trust; Cara Stanko, Trust; Chris
Stanko, Trust; Michael Stanko, Trust; Elizabeth
Stanko, Trust; School of Gymnastics,
Inc., a defunct Nebraska
corporation, Defendants,
River Enterprises Trust; Red Barn Trust,
Defendants/Appellants/Cross-Appellees
Scotty Trust; Stanko Family Trust; Stanko Family Inc.;
Ted Daggett; Robert Spurgeon; Bruce Scott, Defendants.
 Nos. 91-2485, 91-2487 and 91-2528.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 13, 1992.
Decided Oct. 2, 1992.
Rehearing Denied Nov. 17, 1992.
 
 Dean S. Forney, Alliance, Neb., argued (Laurice M. Margheim, on the brief), for defendant-appellant Red Barn.
 Robert G. Simmons, Scottsbluff, Neb., argued, for defendant Stanko.
 John S. Evangelisti, Denver, Colo., argued (Richard C. LaFond on the brief), for plaintiff-appellee.
 Before BEAM, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.
 BEAM, Circuit Judge.
 
 
 1
 Jeanne Stanko and the Trusts appeal a district court[1] judgment setting aside certain transfers of property as fraudulent conveyances. Concepcion Giove appeals the court's ruling that the Nebraska statute of limitations bars any action as to transfers preceding May 9, 1985.
 
 
 2
 The court declined to assign the property in question directly to Giove and ordered her to proceed against it through writs of execution to satisfy a default judgment. It retained jurisdiction to supervise that process.
 
 
 3
 Two jurisdictional questions must be addressed before we may review the district court's well-reasoned opinion. The first is whether there is a final judgment, as required by 28 U.S.C. § 1291, and the second is whether all parties have timely appealed, as required by Fed.R.App.P. 4(a)(4).
 
 
 4
 With respect to finality of the judgment, the question before the district court was whether, all things considered, the conveyances in issue were fraudulent and void. The district court answered that question. Nothing more needs to be decided. The court's retention of jurisdiction for tracing purposes and to oversee Giove's writs of execution does not prevent its decision on the merits from being final. Huey v. Sullivan, 971 F.2d 1362, 1365 (8th Cir.1992) (retention of jurisdiction to oversee execution of judgment is no bar to judgment's finality). Only the fraudulent conveyance decision is before us on appeal.[2] Thus we have jurisdiction over those appellants and appellees who have complied with the procedural prerequisites for appeal.
 
 
 5
 Earlier, Jeanne Stanko moved to dismiss Giove's appeal as untimely. We denied that motion. Giove v. Stanko, No. 91-2487 (8th Cir. Oct. 7, 1991).[3] In district court, on June 3, 1991, Jeanne Stanko moved in the alternative to alter or amend the judgment under Fed.R.Civ.P. 59(e), or for relief from a clerical mistake in paragraph two of the judgment under Fed.R.Civ.P. 60(a). On June 24, 1991, Giove filed her notice of appeal. Then, on June 25, 1991, the district court denied Jeanne Stanko's motion after reviewing the evidence and determining there was no error.
 
 
 6
 Jeanne Stanko then filed a motion in this court to dismiss Giove's appeal as untimely, categorizing her motion below as effectively one to alter or amend the judgment under Fed.R.Civ.P. 59(e). She claimed the district court's denial of that motion, the day after Giove filed her notice of appeal, rendered Giove's appeal premature and therefore untimely under Fed.R.App.P. 4(a)(4).
 
 
 7
 Jeanne Stanko's motion below alleged the judgment contained a misstatement of a date and a numerical discrepancy in a legal description. She termed the error clerical in the text of her motion, and requested no change in or amendment to the substance of the judgment. The district court found there was no error to correct. In view of these facts, Jeanne Stanko's motion is best viewed as a motion for relief from a clerical error. Therefore, under Fed.R.App.P. 4(a)(4), Giove's appeal was timely filed, and is properly before us.
 
 I. BACKGROUND
 
 8
 After reviewing the record and the court's memorandum of decision, we adopt its statement of the facts. Appellant's Appendix, pp. 59-76, 80-81; Memorandum of Decision, Giove v. Stanko, Case No. CV89L-236 (D.Neb. Jan. 11, 1991), as amended (Feb. 7, 1991). However, to give coherence to our discussion we set forth a brief synopsis.
 
 
 9
 The Stanko family, of which Rudy Stanko is a member, owned several meat packing facilities. Rudy Stanko and his cousin Henry Stanko fell afoul of U.S.D.A. regulations, and in 1983 and 1984 were charged with criminal acts. Rudy Stanko's wholly owned corporation, Cattle King, was the vehicle for these acts, and, unless recently released, Rudy is still in prison as a result of these crimes.
 
 
 10
 Numerous suits and claims against Rudy Stanko and Cattle King arose at the time, both independent from and in conjunction with the criminal acts. These included two suits by Giove: a state law suit against Rudy Stanko, Cattle King, and others, filed December of 1983 in a Colorado state court; and a federal discrimination suit against Rudy Stanko, Cattle King, and others filed May 30, 1984 in the District of Colorado.
 
 
 11
 On September 14, 1984, Rudy Stanko was convicted of charges which carried a possible sentence of 20 years imprisonment. On September 17, 1984, he conveyed much of his property to his wife, Jeanne Stanko. In November of 1984 Giove's attorneys received documentation from one of Rudy Stanko's attorneys indicating that Rudy was transferring assets to Jeanne Stanko. Giove took no action.
 
 
 12
 In October and November of 1985, while Rudy Stanko was still at liberty pending the appeal of his conviction, he and Jeanne Stanko created three irrevocable trusts. At the same time, Jeanne Stanko separately created an irrevocable trust consisting mainly of the property Rudy had conveyed to her in September of 1984. On November 27, 1985, Rudy Stanko's affidavit stating he was a pauper was presented to a Scottsbluff, Nebraska, County Court.[4] Rudy Stanko proceeded to default in the suits pending against him.
 
 
 13
 Giove obtained her federal default judgment on March 31, 1986, in the District of Colorado. On July 8, 1986, at an ex parte hearing, Giove's damages were assessed at $824,650.59. In November of 1986 Giove garnished Rudy and Jeanne Stanko's joint certificates of deposit. Rudy Stanko objected to the garnishment, but was unsuccessful. His appeal of the garnishment also failed. In March of 1987, Rudy Stanko sought relief from Giove's default judgment. Relief was finally denied when Giove's default judgment was upheld by the Tenth Circuit on June 22, 1989. Appellant's Appendix, p. 67; Memorandum of Decision, Jan. 11, 1991, at 9.
 
 
 14
 On May 9, 1989, Giove filed this fraudulent conveyance action in the District of Nebraska, under diversity jurisdiction, in an attempt to satisfy her judgment. The district court decided, after trial, that the transfers on or after September 17, 1984, from Rudy Stanko to Jeanne Stanko, and the transfers from both, or either, of them to the trusts established by both, or either, of them were fraudulent as to then existing or future creditors. It also decided that those transfers which occurred before May 9, 1985, although fraudulent, predated Nebraska's four year statute of limitations. Therefore, only those transfers occurring after May 9, 1985, were declared void. It directed Giove to proceed via writ of execution against whatever assets became eligible to satisfy her judgment by the voiding of the post-May 9th transfers. Giove, Jeanne Stanko, and the Trusts all appeal the judgment.
 
 
 15
 Although the parties raise many issues on appeal, after careful consideration, we have little to add to the district court's thorough and well-reasoned opinion.
 
 II. DISCUSSION
 
 16
 Jeanne Stanko appears to claim that only transfers by Rudy Stanko were fraudulent. However the district court found that, under the governing Nebraska statutes, Neb.Rev.Stat. §§ 36-601 et seq. (reissued 1988) (repealed 1989), both Rudy Stanko and Jeanne Stanko possessed the actual intent to defraud Rudy's existing and future creditors through the scheme of transferring property and creating trusts. Thus, transfers of the relevant property by Jeanne Stanko, Rudy Stanko, or the recipient Trusts are all voidable. A fraudulent conveyance cannot succeed simply because the defrauders create an intricate web of entities within which to effect further transfers of the relevant property. We review the district court's findings of fact, and its application of the law to the facts (to determine fraudulent intent) for clear error. See, e.g., United States v. Poitier, 818 F.2d 679, 682 (8th Cir.1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988). We find none.
 
 
 17
 The district court found that Rudy Stanko was attempting to shield his assets from current and future creditors. In making its finding the court correctly considered Rudy Stanko's affidavit to the County Court of Scottsbluff, Nebraska, stating that he was a pauper. Jeanne Stanko and the Trusts object to the district court's consideration of the affidavit on the grounds that it is hearsay ineligible for judicial notice. Despite their objections and Giove's proffers of allegedly applicable exceptions, there is no hearsay question here.[5] The truth or falsity of the affidavit is immaterial. The mere existence of the affidavit, true or false, allowed the court to determine whether or not Rudy Stanko intended to defraud current or future creditors when he transferred assets to Jeanne Stanko. Whether he transferred all his assets to her and actually became a pauper, or transferred some assets while retaining other substantial assets[6] and did not become a pauper, his affidavit of alleged pauperhood is an act from which the trial court could infer fraudulent intent. See, McCormick on Evidence, § 249 (E. Cleary ed. 1984). Since the affidavit is a verbal act reflecting Rudy Stanko's state of mind, it is relevant to whether or not the transfers were made with fraudulent intent. Therefore, under Fed.R.Evid. 402, it was admissible evidence. The district court committed no error in considering the existence and content of the affidavit when determining that the transfers in question were part of a fraudulent scheme.
 
 
 18
 The district court had ample evidence from which to determine that Jeanne Stanko must have been aware of and deeply involved in the scheme to shield Rudy Stanko's assets. Appellant's Appendix, pp. 67-72; Memorandum of Decision, Jan. 11, 1991, at 9-14. The Trusts which Rudy Stanko and Jeanne Stanko established were also inextricably bound up in the scheme. Thus, the court correctly held that Jeanne Stanko's and the Trusts' subsequent transfers of property originating with Rudy Stanko and falling within the statute of limitations are void for fraud.[7]
 
 
 19
 Because Giove slept on her rights, because her judgment is against Rudy Stanko, not Jeanne Stanko or the Trusts, and because we are bound by the statute of limitations, some of the property may have been put beyond Giove's reach by the pre-May 9, 1985, transfers. The parties prematurely attempt to argue questions of title and tracing tied to the execution of Giove's writs. These questions are not properly before us. The district court expressly limited its judgment to the question of voiding fraudulent transfers. The court made no decision as to whether Giove's writs would be successful against all the assets. Instead, the district court directed Giove to proceed against the relevant property via writ of execution, at which time, no doubt, questions of tracing and of where title resided as of May 9, 1985, will be addressed.
 
 
 20
 In an exercise of its equitable powers, the district court gave Jeanne Stanko and the Trusts an opportunity to raise any affirmative defenses Rudy Stanko could have raised against Giove, had he not defaulted.[8] After hearing and considering the affirmative defenses the district court still found in favor of Giove. We see no reason to disturb this finding.
 
 
 21
 Jeanne Stanko and the Trusts now claim the right to have the entire default judgment, including damages, relitigated, arguing that it is being enforced against "their" property and that they were not parties or privies to the default judgment. Giove, with a final default judgment which has been appealed and affirmed, is unquestionably Rudy Stanko's creditor with standing to bring an action against his property wherever she can find it. Appellant's Appendix, p. 67; Memorandum of Decision, Jan 11, 1991, at 9. Giove seeks to reach Rudy Stanko's property by having fraudulent conveyances set aside. Therefore the action is against Rudy Stanko's, not Jeanne Stanko's or the Trusts', property.
 
 
 22
 There is no due process requirement that Jeanne Stanko be allowed to directly attack a judgment against Rudy Stanko's property. Jeanne Stanko and the Trusts are in court because they were alleged to be holding and fraudulently conveying Rudy Stanko's property. None of their own property is at risk. Jeanne Stanko and the Trusts were afforded due process by the opportunity to collaterally attack Giove's judgment, to litigate whether the conveyances were fraudulent, and to show that the property in question was rightfully theirs rather than Rudy Stanko's. Kapp v. Naturelle, Inc., 611 F.2d 703, 707-08 (8th Cir.1979); First Nat'l Bank v. Commissioner, 112 F.2d 260, 262-63 (7th Cir.), cert. denied, 311 U.S. 691, 61 S.Ct. 72, 85 L.Ed. 447 (1940). Although some of the property may now be beyond Giove's reach, due to the operation of the statute of limitations, once title in the property is determined to have been in Rudy Stanko as of May 9, 1985, Jeanne Stanko and the Trusts have no further interest to defend.
 
 
 23
 We have carefully considered all other issues the parties have raised and reject them on the merits.
 
 III. CONCLUSION
 
 24
 For the reasons stated above, we affirm the judgment below in every respect and extend to the district court our thanks for skillfully unraveling this tangled skein.[9]
 
 
 
 [1]
 The Honorable Warren K. Urbom, Senior United States District Judge for the District of Nebraska
 
 
 [2]
 This is true despite the parties attempts to litigate attachment and tracing questions in their respective briefs
 
 
 [3]
 Giove contends that our October 7 ruling forecloses further attack. If we lack jurisdiction, however, the law of the case doctrine may not grant it
 
 
 [4]
 Rudy and Jeanne Stanko were Nebraska residents, Cattle King's facilities were located in Colorado
 
 
 [5]
 Federal Rule of Evidence 801 defines hearsay as an assertion offered for the truth of the matter asserted. The affidavit was not offered to prove that Rudy was actually a pauper, but to show his actual intent to defraud his creditors through a scheme of apparent divestment of assets resulting in apparent pauperhood
 
 
 [6]
 Jeanne Stanko and the Trusts argue that Rudy Stanko's alleged stash of ephemeral golden coins prevents the transfers from being fraudulent. Because the district court found actual intent to defraud under Neb.Rev.Stat. § 36-607, the stash is immaterial. No showing of actual or believed insolvency is necessary to find actual intent to defraud under Neb.Rev.Stat. § 36-607, as opposed to presumed intent to defraud under §§ 36-604 & 606. The alleged stash may have been relevant to actual intent to defraud, but only as further indicia of Rudy Stanko's and Jeanne Stanko's intent to put Rudy's assets beyond the reach of his creditors and the courts
 
 
 [7]
 Nebraska's statute of limitations mandates that actions for fraud must be brought within four years of the fraud, unless the defrauded party did not discover the fraud earlier. Neb.Rev.Stat. § 25-207. The defrauded party must show an impediment to earlier discovery if it is bringing its action more than four years after the fact. Mangan v. Landen, 219 Neb. 643, 365 N.W.2d 453, 455 (1985). Parties will be held to have discovered the fraud when it is clear they have knowledge of facts from which the fraud reasonably could be inferred. MacMillen v. A.H. Robins Co., 217 Neb. 338, 348 N.W.2d 869, 872 (1984). Giove claims Rudy's recalcitrance prevented her from discovering the fraud before she received her default judgment. However, the district court correctly found that she was put on inquiry notice of the transfers as early as November 6, 1984, by a letter she received during settlement negotiations with Rudy Stanko which mentioned substantial asset transfers from Rudy Stanko to Jeanne Stanko
 The district court was also correct in finding that the statute was not tolled until Giove received her judgment, because she could have brought an action to void the transfers during the pendency of her original action. Neb.Rev.Stat. § 36-610; Brown v. Borland, 230 Neb. 391, 432 N.W.2d 13, 16 (1988) (creditors include a person with any claim, whether matured or not, and regardless of whether the claim has been reduced to a judgment).
 
 
 [8]
 The district court extended this opportunity to Jeanne Stanko and the Trusts, although, because Jeanne Stanko and the Trusts were Rudy Stanko's fraudulent grantees and successors in interest, Appellant's Appendix p. 14, it need not have done so. Kapp v. Naturelle, Inc., 611 F.2d 703, 707-08 (8th Cir.1979); First Nat'l Bank v. Commissioner, 112 F.2d 260, 236 (7th Cir.), cert. denied, 311 U.S. 691, 61 S.Ct. 72, 85 L.Ed. 447 (1940)
 
 
 [9]
 Sorting through this maze of ultimately meritless arguments consumed an inordinate amount of judicial time. Because judicial time is a limited resource, we remind all parties to consider Fed.R.App.P. 38 when crafting their appeals